1036

Howard THOMPSON, Thomas Fletcher, individually and on behalf of Garden City Community Association, Dennis Tracey and Shore Drive Lake Arrowhead Road Community Association, Respondents v. COUNTY OF HORRY, A Body Politic, Appellant.

(362 S. E. (2d). 646)

Court of Appeals

*John P. Henry,* of *Thompson, Henry & Gwin, P.A.,* Conway, *for appellant.*

*Howell V. Bellamy, Jr., Henrietta U. Golding,* and *Preston B. Haines, III,* all of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A.,* Myrtle Beach, *for respondents.*

Heard Sept. 22, 1987.

Decided Oct. 26, 1987.

BELL, Judge:

This declaratory judgment action challenges Horry County's expenditure of revenues collected pursuant to the South Carolina Accommodations Tax Act.[1] The plaintiffs, who represent community associations in the Garden City and Shore Drive communities of Horry County, allege that the County's expenditures of accommodations tax revenues for fiscal years 1985 and 1986 violated the Act. The circuit court held seven of the expenditures unlawful. The County appeals. We reverse.

The Accommodations Tax Act was enacted to raise revenue for the purpose of promoting tourism and providing for facilities and services which enhance the ability of counties and municipalities to attract and provide for tourists. Section 1, Act No. 316, Acts and Joint Resolutions of the General Assembly of South Carolina, Regular Session, 1984, 63 Stat. at Large 1570 (1984). To generate revenues, the Act imposes an accommodations tax on the transient use of hotel, motel, and campground facilities. The Tax Commission annually returns a portion of the tax receipts to the county or municipality from which they were collected.

Section 12-35-720(1) provides in pertinent part:

> The funds received by a municipality or a county must be allocated in the following manner. (A) The first twenty-five thousand dollars must be allocated to the general fund of the municipality or county.... (B) Twenty-five percent of the remaining balance must be

---

[1] Codified as Section 12-35-710 to -730, Code of Laws of South Carolina, 1976, as amended.

allocated to a special fund and used for advertising and promotion of tourism.... (C) The remaining balance received by a municipality or county must be allocated to a special fund and used for tourism-related expenditures.

With respect to the (C) fund, the section goes on to state:

In the expenditure of funds, county councils are required to promote tourism and make tourism-related expenditures primarily in the geographical areas of the county in which the proceeds of the tax are collected where it is practical. Any person or political subdivision which determines that the expenditure of accommodations tax proceeds by the county is not substantially in compliance with the provisions of this paragraph may seek relief to obtain compliance in the Court of Common Pleas of the county concerned.

In 1985, Horry County received $405,726 in accommodations tax revenues, of which $285,544 were allocated to the (C) fund. In 1986 accommodations tax receipts were $412,008, of which $290,256 were allocated to the (C) fund.

Apparently, residents of the Garden City and Shore Drive communities became dissatisfied after the County failed to appropriate (C) funds to pay for sidewalks, street lighting, and other amenities in their communities. The Community Associations for these two areas brought this suit, challenging the following expenditures from the (C) fund:

1985

| | |
|---|---|
| Little River Art Festival | $ 1,247 |
| Loris Bog-off Festival | $ 8,779 |
| Aynor Harvest Hoe-Down | $ 6,100 |
| Conway Tobacco Festival | $ 5,000 |

1986

| | |
|---|---|
| Conway Tobacco Festival | $ 8,000 |
| Coastal Rapid Transit Authority | $25,000 |
| Area Council on Transportation | $15,000. |

They alleged these expenditures violated the Act because they were not made primarily in the geographical area of the county in which the proceeds of the tax were collected.

The Legislature has prescribed two requirements for expenditures from the (C) fund: (1) they must be "tourism-related" and (2) they must be made "primarily in the geographical areas of the county in which the proceeds of the tax are collected where it is practical." A party seeking to challenge expenditures has the burden of proving the county is not in "substantial compliance" with these provisions. In this case, the second requirement is in issue.

The dispositive question on appeal is: does the Act require all revenues which are allocated to the (C) fund to be returned directly to the geographic areas from which they are collected?

The circuit court held most of the challenged expenditures unlawful because, in its opinion, the Act prohibits the County from spending taxes collected in the unincorporated areas of the county in the incorporated areas of the county.[2] No such prohibition appears in the text of the statute, however.

> The Legislature could easily have restricted the use of
> ■ county (C) funds in the manner argued for by the
> Community Associations. It need only have provided
> that the revenues be spent "exclusively" in the "unincorporated areas" of the county in which the proceeds of the tax are collected. Instead, it directed expenditures to be made "primarily" in the "geographical areas" of the county where the tax is collected. The word "primarily" means "principally" or "for the most part." It clearly gives the County a measure of discretion in deciding where the funds will be spent. Not all funds must be returned to the area from which they were collected. Likewise, the use of the term "geographical areas" rather than "unincorporated areas" gives the County discretion to expend funds for events or facilities which encourage tourism in a geographic area

---

[2] The court disallowed one of the challenged items on the ground that it should have been paid from the general fund. This objection was not raised in the pleadings. Moreover, there was evidence that the service (public transportation) was sufficiently tourism-related to justify an expenditure of (C) funds as a supplement to general funds. Such supplemental expenditures are clearly contemplated by the Act, which expressly permits (C) funds to be spent to supplement such general fund items as law enforcement, access roads, parking lots, fire protection, and shuttle transportation. *See* Code Section 12-35-720(1).

of the county, even though the area may include a municipality.

In our view, the statute reflects a practical recognition by the Legislature that expenditures which promote tourism will generally enlarge the economic benefits for an entire geographic area of the county without regard to municipal boundary lines. Thus, for example, a festival held within the city limits will bring economic benefits to motels and campgrounds along highways coming into the city. Conversely, a visitor information center in an unincorporated area of the county will bring economic benefits to the entire geographic area by promoting tourist services and facilities in nearby incorporated areas. For this reason, it makes sense to give counties some flexibility as to how and where they spend accommodations tax revenues.

This reading of the statute is reinforced by the further provision that suit may be brought to challenge expenditures if the county is not "substantially in compliance" with its provisions. A standard of "substantial" compliance, rather than "strict" compliance, acknowledges that the county must have some discretion in deciding how to spend (C) funds. As long as it substantially complies with the two requirements of Section 12-35-720(1) in the overall expenditure of funds, there is no warrant for judicial interference with its decisions.

On the record before us, we hold that the County has substantially complied with the statutory requirements for expending (C) funds. The Act does not require all (C) fund revenues to be returned exclusively to the area from which they were collected, nor does it prohibit a county from expending some funds within an incorporated area of the county. We do not mean to suggest that a county has unbridled discretion in spending (C) funds. Clearly, it must follow the statutory guidelines which govern such expenditures. However, we are satisfied that in this case the County exercised its discretion in good faith and that its (C) fund expenditures substantially complied with the statute.

The judgment of the circuit court is reversed.

Reversed.

SHAW and CURETON, JJ., concur.