572 S.E.2d 462

**DAISY OUTDOOR ADVERTISING COMPANY, INC., Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent.**

No. 3564.

Court of Appeals of South Carolina.

Submitted July 10, 2002.

Decided Nov. 12, 2002.

Robert D. Moseley, Jr., of Greenville;  for Appellant.

Assistant Chief Counsel Barbara M. Wessinger, of Columbia;  for Respondent.

HUFF, J.:

Daisy Outdoor Advertising Company, Inc. (Daisy) appeals from the circuit court's affirmance of the Administrative Law

Judge's (ALJ's) order upholding the South Carolina Department of Transportation's (SCDOT's) revocation of two permits for outdoor advertising signs. We affirm.[1]

## FACT AND PROCEDURAL HISTORY

Daisy applied for permits for two outdoor advertising signs to be located along I–26 in Spartanburg County in November of 1998. As the signs were to be located in an area without zoning, Daisy was required to identify a qualifying business within 600 feet of the sign sites. The applications listed Quick Response Fire Systems as the qualifying business. On March 31, 1999, SCDOT informed Daisy that the applications had been approved.

In May of 1999, Quick Response ceased its operations at this location. By August of 1999, it had vacated the location, the power had been disconnected, and a "For Lease" sign had been placed in front of the building. In November of 1999, SCDOT informed Daisy that it was canceling the permits for the signs.

Daisy appealed to the ALJ. The ALJ found SCDOT had established by prima facie evidence that Quick Response's activities at the location were a sham as defined in 25A S.C.Code Ann. Regs. 63–342(U) (Supp.2001). He then found Daisy failed to overcome SCDOT's prima facie case that Quick Response was primarily situated at this location to qualify the sign site and failed to establish that there was any meaningful business conducted at Quick Response for the requisite one-year period after the approval of the applications. Daisy appealed to the circuit court, which affirmed the ALJ. This appeal followed.

## STANDARD OF REVIEW

The standard of review for a court reviewing the decision of an ALJ is set forth in S.C.Code Ann. § 1–23–610(D) (Supp.2001) of the Administrative Procedures Act (APA). The court may not substitute its judgment for that of the ALJ on questions of fact when those facts are supported

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

by substantial evidence. *Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000). Substantial evidence is relevant evidence that, considering the record as a whole, a reasonable mind would accept to support the ALJ's decision. *Id.* It exists when, if the case were presented to a jury, the court would refuse to direct a verdict because the evidence raises questions of fact for the jury. *Id.* Substantial evidence is more than a mere scintilla of evidence, but is something less than the weight of the evidence. *Id.* Furthermore, the possibility of drawing two inconsistent conclusions from the evidence does not prevent a court from concluding that substantial evidence supports the ALJ's finding. *Id.*

## DISCUSSION

Daisy argues the circuit court's order should be reversed because the ALJ erred in upholding SCDOT's revocation of the sign permits. We disagree.

In the Highway Advertising Control Act, the General Assembly acknowledged that outdoor advertising is "a business which must be allowed to exist and operate where other business and commercial activities are conducted and that a reasonable use of property for outdoor advertising to the traveling public is desirable." S.C.Code Ann. § 57–25–130 (Supp.2001). However, the General Assembly also recognized that the erection and maintenance of outdoor advertising signs adjacent to the interstate and federal-aid primary systems must be regulated. *Id.* Thus, it granted SCDOT the authority to issue permits for the erection and maintenance of the signs and to promulgate regulations governing the issuance of the permits. S.C.Code Ann. § 57–25–150(A) (Supp.2001).

Generally, the Highway Advertising Control Act limits the placement of commercial outdoor advertising signs to zoned industrial areas, zoned commercial areas, unzoned commercial areas, or unzoned industrial areas. S.C.Code Ann. § 57–25–140(7) & (8) (Supp.2001). An unzoned commercial or industrial area is defined as "the land occupied by the regularly used building, parking lot, and storage and processing area of a commercial, business, or industrial activity and land within six hundred feet of it on both sides of the highway." S.C.Code Ann. § 57–25–120(4) (Supp.2001). Such an area does not

include an area occupied by "sham activities." 25A S.C.Code Ann. Regs. 63–342(FF)(4) (Supp.2001). A sham activity is defined as:

> any activity that is seemingly a commercial or industrial activity but which was created primarily or exclusively to qualify an area as an unzoned commercial or industrial area and which does not conduct any meaningful business at the activity site. Failure of an activity to maintain the standards set forth under the definition of transient and temporary [2] within one year after a sign permit was issued based on the activity qualifying the sign site as an unzoned commercial or industrial area shall be prima facie evidence that the activity was a sham.

25A S.C.Code Ann. Regs. 63–342(U) (Supp.2001). If an activity is subsequently determined to be a sham activity, the sign permitted under this activity shall be illegal and must be removed at the sign owner's or landowner's expense. 25A S.C.Code Ann. Regs. 63–344(G) (Supp.2001).

▆▆▆▆ Daisy acknowledges in its brief that Quick Response ceased its operations less than one year after the permit approval, and thus, SCDOT established a prima facie case that Quick Response was a sham activity. Once a party establishes a prima facie case, the burden of proof shifts to the opposing party. *Hadfield v. Gilchrist*, 343 S.C. 88, 538 S.E.2d 268 (Ct.App.2000). The ALJ found Daisy had failed to overcome SCDOT's prima facie case that Quick Response was a sham activity. We reject Daisy's contention that the ALJ improperly shifted the burden of proof to Daisy. Further-

---

**2.** Transient or temporary activities are defined as activities that do not have:

> (1) at least one employee attendant at the activity site, performing meaningful work and available to the public for at least thirty-six (36) hours per week on at least four (4) days per week for at least forty-eight (48) weeks per year;
> (2) electricity, telephone, running water, indoor restroom, permanent flooring other than dirt, gravel, sand, etc; adequate heating; and
> (3) the activity, or a major portion of it, conducted from a permanent building constructed principally of brick, concrete block, stone, concrete, metal, or wood or some combination of these materials or from a mobile home or trailer which the applicant can prove is considered part of the real estate and taxed accordingly.

25A S.C.Code Ann. Regs. 63–342(CC) (Supp.2001).

more, we find substantial evidence in the record supports the ALJ's finding that Daisy failed to overcome SCDOT's prima facie case that Quick Response was primarily situated at this location to qualify the sign sites as an unzoned commercial area.

Pursuant to Regulation 63–342(U), Daisy had the burden of coming forward with evidence to show (1) Quick Response was not created primarily or exclusively to qualify the location for an outdoor advertising sign, and (2) it conducted meaningful activity at the site. Daisy asserts it met this burden by presenting evidence that Quick Response was a viable business conducting meaningful business for more than a year before the approval of the sign permits. The issue is not whether Quick Response was a legitimate business, but rather whether its activities at the site were created primarily or exclusively to qualify the site for placement of the signs.

Daisy, whose primary business is outdoor advertising, owns the buildings Quick Response occupied on the site. Daisy and Quick Response entered into the lease on April 23, 1998. The terms of the lease were very favorable towards Quick Response. The rent was only $400.00 a month compared to $1,600.00 a month Quick Response paid at its former location. Daisy continued to pay the electric bills for the site until October 19, 1998, when the electricity was connected in Quick Response's name. Quick Response did not reimburse Daisy until eight months later for all of the bills it had paid from April to October.

There is no dispute that Quick Response conducted its normal business activities at the site from April of 1998 until May of 1999. However, Spartanburg County never issued a certificate of occupancy for the building on the site. Accordingly, no business could legally occupy the structure. SCDOT's Director of Outdoor Advertising testified that in addition to the closing of the business within one year of the permit, SCDOT considered the fact that Quick Response did not have a permit to occupy the building in determining that no meaningful business occurred at the location.

We next consider whether Quick Response conducted meaningful business at the location. The ALJ held, "[T]he issue is not whether the qualifying business was operational

prior to the submittal of outdoor advertising permit applications to SCDOT but rather whether it 'maintained' meaningful operation after the permit was approved in order to provide evidence of a commercial area." Daisy asserts the ALJ improperly held that the time period for measuring whether a qualifying business is conducting meaningful business continues for a period of one year after approval of the permit. It asserts that the operative time in which the business must be evaluated is at the time of the application or during the initial investigation surrounding the issuance of the permits.

"Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers." *TNS Mills, Inc. v. South Carolina Dep't of Revenue,* 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998); *see also Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997) (stating courts should consider not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statute and the policy of the law). "The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Dunton v. South Carolina Bd. of Examiners in Optometry,* 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987). Furthermore, an agency's interpretation of its own regulation deserves considerable deference. *Leventis v. S.C. Dep't of Health & Envtl. Control,* 340 S.C. 118, 530 S.E.2d 643 (Ct.App.2000).

SCDOT considers the year following the issuance of the permit in determining whether meaningful activities occur at a qualifying business. In promulgating Regulation 63–342(U), SCDOT obviously intended for the entire one-year period following the issuance of the permit to be considered in its evaluation as the failure of the business to maintain the business for that year constitutes prima facie evidence that the activity is a sham. This interpretation is consistent with the Highway Advertising Control Act's requirement that outdoor advertising signs be limited to unzoned areas of commercial activity. It furthers the purpose of the act, which, in part, is to prevent distraction of operators of motor vehicles, promote the safety, convenience, and enjoyment of travel on highways within this State, and preserve and enhance the

natural scenic beauty and aesthetic features of highways and adjacent areas. S.C.Code Ann. § 57–25–150 (Supp.2001). SCDOT's Director of Outdoor Advertising explained that if SCDOT did not effectively regulate the activities it permitted as commercial activities, the Federal Highway Administration could penalize the state by withholding up to ten percent of the state's federal highway funds. Accordingly, we find no error in the ALJ's interpretation of the regulation.

Considering the record as a whole and the purpose of the Act and regulations, we find substantial evidence supports the ALJ's determination that Daisy did not establish Quick Response conducted meaningful business at the location. Thus, we hold the ALJ did not err in ruling that Quick Response was a sham activity under the Highway Advertising Control Act, requiring cancellation of the outdoor advertising permits and removal of the sign structures.

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.