654 S.E.2d 92

I. Jenkins MIKELL, Jr. and Pinkney V. Mikell, Respondents,

v.

COUNTY OF CHARLESTON and Timothy E. Scott, A.D. Jordan, Curtis E. Bostic, Carolyn Condon, Ed Fava, Barrett Lawrimore, Francis J. Roberts, Leon E. Stavrinakis, and Charles T. Wallace in their capacity as Members of Charleston County Council, George Lee Mikell, Julia Mikell Flowers, Daisy Mikell Pedrick, Mary Mikell, John Mikell, and Peter's Point Associates, LP, Defendants,

of whom George Lee Mikell, Julia Mikell Flowers, Daisy Mikell Pedrick, Mary Mikell, John Mikell, and Peter's Point Associates, LP, are the Appellants.

No. 4296.

Court of Appeals of South Carolina.

Submitted May 9, 2007.

Decided Oct. 4, 2007.

Rehearing Denied Dec. 20, 2007.

Morris A. Ellison, Perrin Quarles Dargan, III, Carolyn H. Blue, of Charleston, for Appellants.

Capers G. Barr, III and Frances Isaac Cantwell, both of Charleston, for Respondents.

BEATTY, J.:

In this appeal from the rezoning of the Peter's Point Planned Development, George Lee Mikell, Julia Mikell Flowers, Daisy Mikell Pedrick, Mary Mikell, John Mikell, and Peter's Point Associates, LP, (hereinafter "Appellants")[1] contend the master-in-equity erred in finding a conflict between the planned development and the Charleston County Zoning

---

1. Although Charleston County and the members of its council are listed in the caption on appeal, we note they were dismissed as parties by order of this court pursuant to their motion to withdraw their appeal.

and Land Development Regulations ("ZLDR") and subsequently voiding the planned development. We reverse.[2]

## FACTS

Appellants are the sole owners of 162 acres of land located on Edisto Island, South Carolina, also known as Peter's Point Plantation. The land in question is a peninsula-like tract formed by the confluence of two tidal creeks. The land is divided into six parcels whose zoning is governed by the ZLDR. Under the ZLDR, five of the parcels were zoned Agricultural Residential (AGR). The ZLDR provides that base zoning district AGR parcels have a maximum recommended density for residential use of one dwelling unit per acre. The last parcel was zoned Agricultural Preservation (AG–10), which provides for a recommended density of one dwelling unit per ten acres. In order to achieve the highest allowed density of one dwelling unit per five acres, an application must be processed through the planned development process. Without application for maximum density, the original zoning plan allowed for the development of approximately sixty-four units.

On December 17, 2003, Appellants filed a Zoning Change Application requesting the land in question be rezoned as a planned development that would include single family homes. The permitted uses of the planned development would include detached single family homes on lots having at least one acre; agriculture; horse or other animal production; commercial timber operations; and stables. The application stated that the new planned development would shift the number of units within the tracts of Peter's Point and would allow more units in the previously zoned AG–10 tract. The application proposed to reduce the total number of dwelling units from sixty-four to fifty-five and reduce the total number of waterfront lots to fifty-one.

On June 22, 2004, the Charleston County Council (County Council) adopted Ordinance No. 1300, which rezoned the land in question pursuant to Article 3.5 of the ZLDR from AGR/

---

**2.** This case was originally scheduled for oral argument. The parties, however, consented to a request by this court to have the case submitted on the record.

AG–10 districts to a planned development district. This change reduced the overall number of units allowed, but reallocated them, increasing the number of dwelling units in the AG–10 area from ten to thirty-nine units. On July 1, 2004, adjoining property owners and distant cousins of Appellants (hereinafter "Respondents") filed a Complaint against Appellants stating that the rezoning violated the ZLDR by increasing the density ratio of the previously zoned AG–10 area from a density ratio of one dwelling per ten acres to one dwelling per 2.73 acres. Both parties filed motions for summary judgment.

Although the parties raised several issues during the summary judgment hearing, the master limited his analysis by stating, "[t]he issue in this case turns on the construction of various provisions of the ZLDR, particularly those of Article 4.5.3, the AG–10 regulations, and those of Article 3.5, the planned development regulations, in a manner that effectuates the intent of County Council." After analyzing this issue, the master ultimately granted summary judgment in favor of Respondents.

In reaching this decision, the master found Ordinance No. 1300 conflicted with Article 4.5.3B of the ZLDR which limits the density in an AG–10 district to no higher than one residential dwelling unit per five acres. The master rejected Appellants' contention that Article 3.5 of the ZLDR, which states that planned developments may provide for variations from other ordinances concerning the density of a parcel, was controlling. The master reasoned that Article 4.5.3.B, the more specific ZLDR provision, took precedence over the more general provisions of Article 3.5. In support of this reasoning, the master relied on what he believed was the intent of County Council in adopting the ZLDR. Specifically, the master found that by enacting the AG–10 and AG–8 regulations, "Council evinced an intent to limit itself in increasing density in these districts, by requiring a planned development and then capping the number of units that could be achieved by way thereof."

Based on this analysis, the master held that because the planned development was adopted contrary to the ZLDR, it was arbitrary, capricious and exceeded the authority of the

County Council. The master also concluded there was insufficient evidence in the record to determine whether or not the planned development met the criteria for creating a planned development contained in the ZLDR. As a result, the master remanded the matter to County Council to make specific findings and for the identification and designation of the open space and other criteria necessary for the establishment of a planned development. The master subsequently denied Appellants' motion for reconsideration. This appeal followed.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, appellate courts apply the same standard that governs the trial court under Rule 56(c), SCRCP, which states that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Helms Realty, Inc. v. Gibson–Wall Co.,* 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005); *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Willis v. Wu,* 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004); *see Schmidt v. Courtney,* 357 S.C. 310, 317, 592 S.E.2d 326, 330 (Ct.App.2003) (stating all ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Gadson v. Hembree,* 364 S.C. 316, 320, 613 S.E.2d 533, 535 (2005). "Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied." *Nelson v. Charleston County Parks & Recreation Comm'n,* 362 S.C. 1, 5, 605 S.E.2d 744, 746 (Ct.App.2004). "However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted." *Ellis v. Davidson,* 358 S.C. 509, 518, 595 S.E.2d 817, 822 (Ct.App.2004).

## DISCUSSION

■ Appellants contend the master erred in voiding the planned development by finding a conflict between Ordinance No. 1300 and the ZLDR. We agree.

■ "It is well settled that when interpreting an ordinance, legislative intent must prevail if it can be reasonably discovered in the language used." *Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995). "In construing ordinances, the terms must be taken in their ordinary and popular meaning." *Id.* at 68, 459 S.E.2d at 843.

"The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Mid–State Auto Auction of Lexington, Inc. v. Altman*, 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). "The first question of statutory interpretation is whether the statute's meaning is clear on its face." *Wade v. Berkeley County*, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002). If a statute's language is plain, unambiguous, and conveys a clear meaning, then "the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). The words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992). A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute. *Daisy Outdoor Adver. Co. v. S.C. Dep't of Transp.*, 352 S.C. 113, 120, 572 S.E.2d 462, 466 (Ct.App.2002).

■ "Rezoning is a legislative matter, and the court has no power to zone property." *Bear Enters. v. County of Greenville*, 319 S.C. 137, 140, 459 S.E.2d 883, 885 (Ct.App. 1995). "The decision of the legislative body is presumptively valid, and the property owner has the burden of proving otherwise." *Id.* Our supreme court has explained:

The authority of a municipality to enact zoning ordinances, restricting the use of privately owned property is founded in the police power. The governing bodies of

municipalities clothed with authority to determine residential and industrial districts are better qualified by their knowledge of the situation to act upon such matters than are the Courts, and they will not be interfered with in the exercise of their police power to accomplish desired end unless there is plain violation of the constitutional rights of citizens. There is a strong presumption in favor of the validity of municipal zoning ordinances, and in favor of the validity of their application, and where the Planning and Zoning Commission and the city council of a municipality have acted after considering all of the facts, the Court should not disturb the finding unless such action is arbitrary, unreasonable, or in obvious abuse of its discretion, or unless it has acted illegally and in excess of its lawfully delegated authority. Likewise, the power to declare an ordinance invalid because it is so unreasonable as to impair or destroy constitutional rights is one which will be exercised carefully and cautiously, as it is not the function of the Court to pass upon the wisdom or expediency of municipal ordinances or regulations. The burden of proving the invalidity of a zoning ordinance is on the party attacking it to establish that the acts of the city council were arbitrary, unreasonable and unjust.

*Rush v. City of Greenville*, 246 S.C. 268, 276, 143 S.E.2d 527, 530–31 (1965). Accordingly, "[t]he Court will not overturn the action of [county council] if the decision is fairly debateable because the [county's] action is presumed to have been a valid exercise of power and it is not the prerogative of the Court to pass upon the wisdom of the decision." *Rushing v. City of Greenville*, 265 S.C. 285, 288, 217 S.E.2d 797, 799 (1975); *Lenardis v. City of Greenville*, 316 S.C. 471, 472, 450 S.E.2d 597, 598 (Ct.App.1994).

■■■ Turning to the facts of this case, we believe County Council's decision to adopt Ordinance No. 1300 was "fairly debatable" and did not constitute an action that was arbitrary, unreasonable, or unjust. First, without question, County Council was authorized to adopt the planned development ordinance. Section 6–29–740 of the South Carolina Code permits "the local governing authority [to] provide for the establishment of planned development districts as amendments to a locally adopted zoning ordinance and official zoning

map." S.C.Code Ann. § 6–29–740 (2004). Moreover, Article 2.1.2 of the ZLDR states that County Council shall have final decision-making authority on matters concerning planned developments, including zoning map amendments. Thus, these provisions provide County Council with final decision-making authority in rezoning actions pursuant to a planned development application such as in the instant case. Accordingly, we find the master erred in ruling that "[i]n approving Ordinance 1300, the Council exceeded the authority devolved upon it by its own laws."

County Council's decision to adopt Ordinance No. 1300 was not only authorized, it was supported by the portion of the ZLDR pertaining to planned developments. Planned developments are governed by Article 3.5 of the ZLDR, and Article 3.5.1 defines a planned development as a "type of zoning district (PD) and a type of development plan." As stated in Article 3.5.2A, the planned development regulations are "intended to encourage innovative land planning and site design" by "[r]educing or eliminating the inflexibility that sometimes results from strict application of zoning standards that were designated primarily for development on individual lots." More importantly, Article 3.5.7 specifically provides for deviations from other zoning designations:

> Planned Developments may provide for variations from other ordinances and the regulations of other established zoning districts concerning use, setbacks, lot area, *density*, bulk and other requirements to accommodate flexibility in the arrangement of uses for the general purpose of promoting and protecting the public health, safety, and general welfare.

(emphasis added); *see* S.C.Code Ann. § 6–29–740 (2004) (outlining planned development districts).[3] Article 3.5.7 goes on to

---

3. Section 6–29–740 provides:

In order to achieve the objectives of the comprehensive plan of the locality and to allow flexibility in development that will result in improved design, character, and quality of new mixed use developments and preserve natural and scenic features of open spaces, the local governing authority may provide for the establishment of planned development districts as amendments to a locally adopted zoning ordinance and official zoning map. The adopted planned development map is the zoning district map for the property. The

outline criteria that must be met for a proposed development that is applying for a higher density than allowed by the base zoning district. As evidenced by the outlined ZLDR provisions and section 6–29–740, planned developments are intended to provide flexibility for County Council to exercise its discretion in addressing requirements in base zoning districts, in this case a density requirement.

Although Article 4.5.3B, the ZLDR section pertaining to AG–10 properties, states that "In order to achieve the highest allowed density of 1 dwelling unit per 5 acres, a request must be processed through the Planned Development process as designated in Art. 3.5 of this Ordinance," the planned development section of the ZLDR, *i.e.*, Article 3.5, allows for a greater maximum density than one dwelling unit per five acres by specifically providing for variations in density from other ordinances and the regulations of other established base zoning districts. Accordingly, we do not agree with the master that a conflict exists between the two ZLDR provisions.

 Furthermore, there is nothing to suggest that County Council cannot change an ordinance that it created. To the contrary, section 6–29–760 of the South Carolina Code allows for the enactment or amendment of any zoning regulation or map. This section authorizes municipalities to amend such regulations, restrictions, and boundaries. *See* S.C.Code Ann. § 6–29–760 (2004) (outlining procedure for enactment or amendment of zoning regulation or map). Hence, a municipality has the legislative power to amend its general zoning ordinance and rezone small areas, so long as its action is not

---

planned development provisions must encourage innovative site planning for residential, commercial, institutional, and industrial developments within planned development districts. Planned development districts may provide for variations from other ordinances and the regulations of other established zoning districts concerning use, setbacks, lot size, density, bulk, and other requirements to accommodate flexibility in the arrangement of uses for the general purpose of promoting and protecting the public health, safety, and general welfare. Amendments to a planned development district may be authorized by ordinance of the governing authority after recommendation from the planning commission. These amendments constitute zoning ordinance amendments and must follow prescribed procedures for the amendments. The adopted plan may include a method for minor modifications to the site plan or development provisions. S.C.Code Ann. § 6–29–740 (2004).

arbitrary or unreasonable. *See Bob Jones Univ., Inc. v. City of Greenville,* 243 S.C. 351, 360, 133 S.E.2d 843, 847 (1963) ("A municipal zoning ordinance is presumably valid. Hence, the burden of proof is upon the party attacking the amendment to establish that the acts of the city council were arbitrary, unreasonable' and unjust.") (citations omitted). Because County Council's actions were authorized and its decision to adopt Ordinance No. 1300, which rezoned the six-parcel, multiple zoning districts of Peter's Point Plantation, was at least "fairly debateable," we hold the master erred in voiding the ordinance. Accordingly, we reverse the master's decision and reinstate Ordinance No. 1300.

## CONCLUSION

For the reasons stated herein, the master's decision is **REVERSED.**[4]

ANDERSON and HUFF, JJ., concur.

---

4. In light of our decision, we need not address Appellants' remaining two issues. *See Hagood v. Sommerville,* 362 S.C. 191, 199, 607 S.E.2d 707, 711 (2005) (stating the appellate court need not address additional issues when resolution of prior issue is dispositive).