THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 G. Dana Sinkler
 and Anchorage Plantation Home Owners Association, Respondents,
 v.
 County of Charleston, Charleston County
 Council and Theodora Walpole and John D. Walpole, Appellants.
 
 
 

Appeal From Charleston County
  R. Markley Dennis, Jr., Circuit Court
Judge

Unpublished Opinion No. 2008-UP-297
Heard May 7, 2008  Filed June 5, 2008    

REVERSED

 
 
 
 Joseph Dawson, III, Bernard E. Ferrara, Jr., Bernice M. Jenkins,
 and Lonnie Hamilton, III, all of North Charleston, and Gerald M. Finkel of Charleston, for Appellants.
 G. Trenholm Walker and Francis M. Ervin, of Charleston, for
 Respondents.
 
 
 

PER CURIAM:  This
 case arises from a zoning ordinance, which rezoned a tomato farm to a planned
 development district.  Upon review, the circuit court found the ordinance invalid
 due to perceived conflicts with the Enabling Act and local zoning regulations. 
 This court finds no such conflicts and defers to the local governing bodys
 judgment regarding this zoning decision.  We reverse and reinstate the
 ordinance.
1. Theodora and John
 Walpole own the property in question and applied to have the property rezoned
 from AG-15 to PD-96, i.e. from agricultural with some houses to a planned
 development district.  Charleston County Council approved the application and
 issued an ordinance rezoning the property as PD-96.
Dana
 Sinkler and Anchorage Plantation Homeowners Association (hereinafter Sinkler)
 brought a declaratory judgment action challenging County Councils rezoning of
 the property.  The circuit court found the ordinance was invalid and the
 property was still zoned AG-15.  The circuit court found the submitted plan for
 the property did not meet the Enabling Acts requirements of mixed use,
 improved property design, and specifically designated open space.  As an
 additional sustaining ground, the circuit court found the zoning and land
 development regulations (ZLDR) lacked a process to change AG-15 to planned
 development.  Charleston County, the Council, and the Walpoles (collectively
 the County of Charleston) appealed the circuit courts ruling.
2. The circuit court
 found the ordinance violated sections 6-29-720 and 740 of the South Carolina
 Codes Enabling Act and, therefore, found the ordinance invalid.  We disagree
 because of the deference provided local governing bodies and the flexibility
 created through the Enabling Act.
To provide the
 proper framework, this court first recognizes that a holistic reading of the
 Enabling Act indicates its purpose is to provide the flexibility and ability
 for a local governing authority to make local decisions regarding zoning.  See S.C. Code Ann. §§ 6-29-720(C) & 740 (Supp. 2007); Dunbar v. City of
 Spartanburg, 266 S.C. 113, 119, 221 S.E.2d 848, 850 (1976) (noting a
 predecessor to the Enabling Act of 1994 was broad in its scope and gave
 municipalities much authority in the field of zoning).  The narrow reading of
 the Enabling Act by the circuit court is at direct odds with this intent.
Further,
 the circuit court exceeded the applicable scope of review because a reviewing
 court should practice judicial restraint and not supplant its judgment for the
 local governing authoritys judgment.  Specifically, our supreme court stated:

 The
 governing bodies of municipalities clothed with authority to determine
 residential and industrial districts are better qualified by their knowledge of
 the situation to act upon such matters than are the Courts, and they will not
 be interfered with . . . unless there is plain violation of the constitutional
 rights of citizens.  There is a strong presumption in favor of the validity of
 municipal zoning ordinances, and in favor of the validity of their application,
 and where the Planning and Zoning Commission and the city council of a
 municipality has acted after considering all the facts, the Court should not
 disturb the finding unless such action is arbitrary, unreasonable, or in
 obvious abuse of its discretion, or unless it has acted illegally and in excess
 of its lawfully delegated authority.  Likewise, the
 power to declare an ordinance invalid because it is so unreasonable as to
 impair or destroy constitutional rights is one which will be exercised
 carefully and cautiously, as it is not the function of the Court to pass upon
 the wisdom or expediency of municipal ordinances or regulations.

Bob Jones Univ., Inc. v.
 City of Greenville, 243 S.C. 351,
 360, 133 S.E.2d 843, 847 (1963) (citation omitted).  This court additionally
 held, [w]e cannot insinuate our judgment into a review of the City Councils
 decision, but must leave that decision undisturbed if the propriety of that
 decision is even fairly debatable.  Lenardis v. City of Greenville,
 316 S.C. 471, 472, 450 S.E.2d 597, 598 (Ct. App. 1994) (citation omitted).
The circuit court
 specifically found the ordinance violated section 6-29-720 of the Enabling Act because
 the ordinance failed to meet the provided definition.  Section 6-29-720(C)(4)
 defines a planned development district as:

 [A] development project comprised of housing of different types
 and densities and of compatible commercial uses, or shopping centers, office
 parks, and mixed-use developments.  A planned development district is
 established by rezoning prior to development and is characterized by a unified
 site design for a mixed use development.

First, we note the
 prefatory language before the definitions of possible planning techniques,
 including the above definition for a planned development district, states, [t]he zoning ordinance may utilize the following or any other zoning
 and planning techniques for implementation of the goals specified above.  Failure
 to specify a particular technique does not cause use of that technique to be
 viewed as beyond the power of the local government choosing to use it. 
 S.C. Code Ann. § 6-29-720(C) (emphasis added).
At oral argument,
 Sinkler argued the County Council did not avail itself of this curative
 language because the County Council utilized one of the definitions.  This
 court need not explore Sinklers argument as this court defers to the County
 Councils judgment regarding the plan.  In the ordinance, the County Council
 found that the plan met Article 3.5 of the ZLDR by:

 Providing
 a greater choice in the type of environment and living units available to the
 public through lot size ranges (minimum of one acre);
 Providing
 more open space land use by 224 acres of common open space land use and an
 additional 345 acres of open space land use on residential lots totaling 569
 acres of the tracts 747 acres;
 Providing
 a creative approach to the use of land by limiting the total number of
 residential lots to 107, limiting the uses in these areas from that which would
 be allowed in the AG-15 Zoning District, and incorporating existing water
 features into the common open space areas providing for greater wildlife
 habitat area and protecting water quality; and by Providing (sic) an efficient
 use of the land that results in a smaller network of utilities and streets and
 a variety of lot sizes.

Notably, Article 3.5.1 of the
 ZLDR incorporates the definition of planned development district in the
 Enabling Act.  Article 3.5.2 provides the intent for planned development
 districts, which is consistent with section 6-29-740.
Therefore, County
 Councils above findings square with the planned development district
 definition provided in section 6-29-720(C)(4).  Further, these findings address
 the remaining reasons the circuit court found the ordinance conflicted with the
 Enabling Act: the ordinances believed failure to improve design and character
 of the community under section 6-29-740, lack of mixed use and open space, and
 deficient specificity.  Thus, we are convinced the planned development district
 satisfies the threshold statutory requirements provided under section 6-29-720
 and 740.
Next,
 we turn to whether County Councils decision was arbitrary or capricious, as
 required by the applicable scope of review.  See Bear Enters. v. County of Greenville, 319 S.C. 137, 141-42, 459 S.E.2d 883, 886 (Ct. App. 1995)
 (stating the reviewing court will focus on whether the municipal zoning
 authoritys decision was arbitrary or capricious).  County Council reviewed the
 plan for the property multiple times and the county staff recommended rezoning
 the property.  Accordingly, County Councils decision was neither arbitrary nor
 capricious.
3. As an additional
 ground for declaring the ordinance invalid, the circuit court held that County
 Council did not intend for a property owner to reduce the residential standards
 of property zoned AG-15 through a planned development district process.  We
 disagree.
In a case recently
 decided by this Court, owners of property adjacent to rezoned land challenged
 the rezoning ordinance, arguing it conflicted with the local ZLDR.  Mikell
 v. County of Charleston, 375 S.C. 552, 654 S.E.2d 92 (Ct. App. 2007), petition
 for cert. filed (S.C. January 24, 2008).  Sinkler acknowledges the uphill
 battle in attempting to distinguish our decision in Mikell.  We
 appreciate able counsels effort to distinguish Mikell, but we find the
 precedent controlling.
In Mikell,
 the master-in-equity found ZLDR restricted County Councils authority to rezone
 the property from AG-10 to PD and remanded the ordinance to County Council.  Id. at 556-57, 654 S.E.2d at 95.  On appeal, this court found the ZLDR supported County Councils decision to rezone the property, and we reversed the masters
 ruling and reinstated the ordinance.  Id. at 560, 654 S.E.2d at 96.  This
 court specifically held ZLDR Article 2.1.2 and section 6-29-740 provide County
 Council with final decision-making authority in rezoning actions pursuant to a planned
 development [PD] application, and Article 3.5.7 provides for deviations from
 other zoning designations.  Id. at 560, 654 S.E.2d at 96-97.  As noted
 in Mikell, there is nothing to suggest that County Council cannot
 change an ordinance that it created.  Id. at 561, 654 S.E.2d at 97.
In
 the case at hand, the circuit court interpreted the ZLDR as barring the use of
 a planned development district to alter AG-15 zoning standards.  The circuit
 court noted that the regulations for AG-8 and AG-10 provide a process to achieve
 the highest allowed density rate, which is to make a request through the planned
 development process.  No such process is mentioned for AG-15 and AG-25 areas.  Therefore,
 the circuit court concluded that the absence of a planned development process for
 AG-15 barred such an action.  However, the plain meaning of the statutory
 language does not indicate the home density cannot be increased given the
 discussed power of County Council.  Accordingly, there is no conflict between
 the ordinance and the ZLDR.
4. Sinklers challenge
 to County Councils legal authority fails to show the enacted ordinance conflicted
 with state law or ZLDR; County Councils decision was arbitrary and
 unreasonable; or rezoning violated Sinklers constitutional rights.  We decline
 to substitute our judgment for that of County Council, and we hold the circuit
 court erred in concluding County Council exceeded its lawfully delegated
 authority.  Due to this finding, we need not address the County of Charlestons remaining arguments.  Accordingly, we reinstate the ordinance rezoning the Walpoles property as PD-96 and the order of the circuit court is
REVERSED.
ANDERSON, HUFF, and KITTREDGE JJ., concur.