687 S.E.2d 326

I. Jenkins MIKELL, Jr. and Pinkney V. Mikell, Petitioners,

v.

COUNTY OF CHARLESTON and Timothy E. Scott, A.D. Jordan, Curtis E. Bostic, Carolyn Condon, Ed Fava, Barrett Lawrimore, Francis J. Roberts, Leon E. Stavrinakis, and Charles T. Wallace in their capacity as Members of Charleston County Council, George Lee Mikell, Julia Mikell Flowers, Daisy Mikell Pedrick, Mary Mikell, John Mikell, and Peters Point Associates, LP, Defendants,

of whom George Lee Mikell, Julia Mikell Flowers, Daisy Mikell Pedrick, Mary Mikell, John Mikell, and Peters Point Associates, LP are the, Respondents.

No. 26749.

Supreme Court of South Carolina.

Heard May 12, 2009.

Decided Dec. 21, 2009.

154

Capers G. Barr, III, of Barr, Unger & McIntosh, of Charleston, Frances I. Cantwell, and William B. Regan, both of Regan & Cantwell, of Charleston, for Petitioners.

Carolyn H. Blue, of Tecklenburg Law Firm, of Charleston, Morris A. Ellison, of Buist, Moore, Smythe & McGee, of Charleston, Perrin O. Dargan, III, of Hagood & Kerr, of Mount Pleasant, for Respondents.

James M. Brailsford, III, of Edisto Island, for Amicus Curiae.

Justice WALLER.

We granted a writ of certiorari to review *Mikell v. County of Charleston*, 375 S.C. 552, 654 S.E.2d 92 (Ct.App.2007), in which the Court of Appeals held Charleston County Council (County) properly enacted a zoning ordinance for a Planned Development (PD) on Edisto Island. We reverse.

## FACTS

The property in question is a 160 acre tract of land on Edisto Island which is known as Peters Point Plantation, a former cotton plantation owned by the Mikell family since

1715. Peters Point forms a point, or peninsula, at the intersection of two tidal creeks: St. Pierre's Creek on the north, and Fishing Creek on the south.

Peters Point is intersected in the middle by Peters Point Road. Petitioners are I. Jenkins Mikell, Jr. and Pinkney V. Mikell, who own land on the north side of Peters Point Road; Respondents, distant family members of Petitioners, own six tracts of land, a total of 161 acres, on the north and south of Peters Point Road. The furthermost tract borders Fishing Creek.

In 1999, Charleston County enacted a Comprehensive Land Use Plan (Plan). The Plan describes that the "Agricultural Area is the outmost portion of the Rural Landscape in Charleston County. Included within it are Wadmalaw Island, Edisto Island [and others]." The Plan calls for preservation of the rural community character. The preferred uses of agricultural areas include "farming and resource management, along with preservation of existing rural settlements, compatible low-density residential development, and small-scale neighborhood commercial development." *Id.* The recommended development densities within such Agricultural Areas of Charleston County are as follows:

— Agricultural Residential (AGR)—1 dwelling per acre to 1 dwelling per 5 acres.

— Agricultural Preservation (AG–10)—1 dwelling per 5 acres to 1 dwelling per 10 acres.

The Plan states "the designation of Agricultural Areas is also intended to direct residential development to existing settlement areas and to avoid the scattering of development into ... Agricultural Preservation Areas."

In 2001, County enacted Zoning and Land Development Regulations (ZLDR) in order to implement the Plan. The ZLDR incorporate the Agricultural Areas of the Plan, and reiterate that an AG–10 Agricultural Preservation District is subject to a maximum density of 1 dwelling per 10 acres. ZLDR § 4.5. However, an AG–10 district may be increased to a "highest allowed density" of 1 dwelling unit per 5 acres, if a request is processed through the Planned Development process of § 3.5 of the ZLDR. The ZLDR sets the maximum

density for AGR districts at 1 dwelling per acre, in accordance with the Plan.

Under the Plan and the ZLDR, of the six tracts of land owned by Respondents, four of the tracts were zoned AGR, and the remaining two tracts were zoned AG–10, such that the total parcel of 161 acres was subject to maximum densities as follows:

— 106.64 Acres (2 tracts)—Zoned AG–10—1 unit per 10 acres = total 10 units [1]

— 55 Acres (4 tracts)—Zoned AGR—1 unit per acre = 54 total units.

Accordingly, as initially zoned, the tracts were subject to a total maximum of 64 units.

In 2003, Respondents filed an application with County to rezone their Peters Point property to a Planned Development (PD) District. The stated purpose of the application was to allow family members to construct homes for themselves and their children at Peter's Point Plantation; they do not intend to permit commercial or multi-family development. On May 4, 2004, County Council enacted Ordinance # 1300 rezoning the parcels from AGR and AG–10 to a PD–103 District. The Planned Development submitted by Respondents (and approved by Ordinance # 1300) had the effect of reducing the total number of units on the entire tract from a maximum of 64, to a total maximum of 55 units. However, the Ordinance also had the effect of increasing the overall density to 1 dwelling unit per 3.8 acres. As to the 106 acre tract of land which was zoned AG–10, the PD had the effect of increasing to a maximum density of 1 unit per 2.4 acres.

Petitioners instituted this declaratory judgment action, contending the ordinance conflicted with County's Comprehensive Plan and the ZLDR. Petitioners' motion for summary judgment was granted by the Master. The Master held Ordinance # 1300 conflicted with the clear, unambiguous requirements of § 4.5.3(B) of the ZLDR limiting the density in an AG–10 district to a maximum of one dwelling per five acres. The Master found § 4.5.3 was, at best, inconsistent with § 3.5.7 of

1. This number could be increased to a maximum of 1 unit per 5 acres if done through Planned Development process, allowing a total maximum of 20 units.

the ZLDR, such that the more specific regulation, § 4.5.3, controlled.

The Court of Appeals reversed. *Mikell v. County of Charleston*, 375 S.C. 552, 654 S.E.2d 92 (Ct.App.2007). It held County Council's decision to allow the PD was at least fairly debatable, and was neither arbitrary nor unreasonable. It found § 3.5.2 and § 3.5.7 of the ZLDR authorized County's exercise of discretion in approving a PD with a higher density than base zoning districts would have allowed. The Court of Appeals found no conflict existed between §§ 3.5.2, 3.5.7 and § 4.5.3(B). We reverse.

## ISSUE

Did the Court of Appeals err in reversing the Master's grant of summary judgment to Petitioners and reinstating Ordinance # 1300?

## STANDARD OF REVIEW

Although summary judgment issues are generally reviewed under a fact-based inquiry, issues involving the construction of an ordinance are reviewed as a matter of law under a broader standard of review than is applied in reviewing issues of fact. *Eagle Container LLC v. County of Newberry*, 379 S.C. 564, 666 S.E.2d 892 (2008). Although great deference is accorded the decisions of those charged with interpreting and applying local zoning ordinances, "a broader and more independent review is permitted when the issue concerns the construction of an ordinance." *Id.* at 568, 666 S.E.2d at 894 *citing Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995). The determination of legislative intent is a matter of law. *Id.*[2]

## DISCUSSION

County's Comprehensive Land Use Plan establishes four distinct areas within County, and sets forth the general types and intensities of development which should occur in

---

2. As to fact based issues, an appellate court applies the same standard as the trial court under Rule 56(c), SCRCP; *Englert, Inc. v. LeafGuard USA, Inc.*, 377 S.C. 129, 659 S.E.2d 496 (2008).

each. The only areas pertinent to this case are those designated as Agricultural, for which there are two categories:

— Agricultural Residential (AGR)—1 dwelling per acre to 1 dwelling per 5 acres.

— Agricultural Preservation (AG–10)—1 dwelling per 5 acres to 1 dwelling per 10 acres.

The ZLDR passed by County to implement the Plan requires an AG–10 District to have a maximum density of 1 dwelling per 10 acres. ZLDR § 4.5.2. However, this density may be increased to a **"highest allowed density" of 1 dwelling unit per 5 acres, if a request is processed through the Planned Development process** of § 3.5 of the ZLDR. ZLDR § 4.5.3.B.

Section 3.5.7 of the ZLDR states:

Unless expressly stated in this section or approved at the time of a Planned Development approval, all applicable standards of this Ordinance shall apply. . . . **Planned Developments may provided for variations from other ordinances and the regulations of the other established zoning districts concerning use, setbacks, lot area, density,** bulk and other requirements to accommodate flexibility in the arrangement of uses for the general purpose of promoting and protecting the public health, safety, and general welfare.

(Emphasis supplied).[3]

The Court of Appeals held that inasmuch as § 3.5.7 permits the Commission to approve a PD with a higher density than other established zoning districts, the action of the Commission in approving respondents' application was at least "fairly debatable." The Court of Appeals also held that, because County has the legislative power to amend its general zoning ordinance and rezone small areas, it acted within its authority. This was error.

---

**3.** County also relies upon S.C.Code Ann. § 6–29–740, which mimics the language of § 3.5.7, relating to planned developments and allows variations from other ordinances and regulations concerning use, setbacks, lot size, and density. For the reasons set forth below, we find the provisions specifically relating to County's planned developments, as set forth in § 4.5.3B of the ZLDR, control.

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Mid-State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). When interpreting an ordinance, the legislative intent must prevail if it can be reasonably discovered in the language used. *Charleston County Parks & Recreation Comm'n v. Somers,* 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995). Further, where two provisions deal with the same issue, one in a general and the other in a more specific and definite manner, the more specific prevails. *Capco of Summerville v. J.H. Gayle Constr. Co., Inc.,* 368 S.C. 137, 628 S.E.2d 38 (2006). *See also Wooten ex rel. Wooten v. S.C. Dep't of Transp.,* 333 S.C. 464, 468, 511 S.E.2d 355, 357 (1999) (specific statutory provision prevails over a more general one); *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.,* 319 S.C. 556, 558, 462 S.E.2d 858, 859 (1995) (general rule of statutory construction is that a specific statute prevails over a more general one). When reviewing issues involving the construction of an ordinance, the determination of legislative intent is a matter of law. *Eagle Container, supra.*

We find the legislative intent, as it relates to AG–10 districts, was to ensure a **maximum** density of 1 dwelling unit per 5 acres on AG–10 districts. This intent is clearly reflected in the Comprehensive Land Use Plan and the ZLDR.

We find it highly implausible that, in setting forth a maximum density of 1 unit per 10 acres for AG–10 Districts, and then allowing for an increase of **up to** 1 unit per 5 acres for a Planned Development, the County intended to authorize the approval of a Planned Development which would completely vitiate the maximum density requirements set forth in § 4.5.3B. Had County intended such a result, § 4.5.3B would have permitted a **higher density** to be approved if processed as a Planned Development, without restricting it to a "**highest allowed density of 1 unit per 5 acres.**" We find County clearly intended to limit those tracts zoned AG–10 to a maximum density of one dwelling per 5 acres, and intended to preserve "existing rural settlements" and "compatible low-density residential development." It was, therefore, error to authorize maximum densities in excess of those specifically

outlined by the ZLDR. The Court of Appeals' opinion is reversed, and the order of the Master is reinstated.

**REVERSED.**

TOAL, C.J., PLEICONES, J., and Acting Justice JAMES E. MOORE, concur.

Acting Justice G. THOMAS COOPER dissenting in a separate opinion.

Acting Justice G. THOMAS COOPER, (dissenting).

This Court would reverse not only the Court of Appeals, but also the Charleston County Planning and Zoning Commission and the Charleston County Council for enactment of Ordinance # 1300, the Peters Point Planned Development. Ordinance # 1300 created a Planned Development, an entity described and authorized in Section 6–29–740 of the South Carolina Code as an independent, distinct zoning district. In doing so, the majority finds:

> ... it highly implausible that, in setting forth a maximum density of 1 unit per 10 acres for AG–10 Districts, and then allowing for an increase of up to 1 unit per 5 acres for a Planned Development, the County intended to authorize the approval of a Planned Development which would completely vitiate the maximum density requirements set forth in Section 4.5.3B.

However, that is exactly what the Act and the Charleston County Zoning and Land Development Regulations (ZLDR) allows the Charleston County Council to do. Its decision is supported by the State statute and the Charleston County Comprehensive Plan and the Charleston County ZLDR. To reverse the action of County Council flies in the face of this Court's frequent pronouncement that it will acknowledge and respect the actions of the pertinent legislative body if its actions are "fairly debatable." *Bear Enterprises v. County of Greenville,* 319 S.C. 137, 459 S.E.2d 883 (S.C.Ct.App.1995); *Rush v. City of Greenville,* 246 S.C. 268, 143 S.E.2d 527 (1965).

> Courts have no prerogative to pass upon the wisdom of the municipality's decision unless such decision is "so unreasonable as to impair or destroy citizen's constitutional rights"; and the decision should not be overturned by a court so long

as the decision is "fairly debatable." This policy of judicial restraint has been echoed in a recent decision.

We have long recognized the principal that the power to zone is exclusively for the legislature and that zoning decisions will not be interfered with when made in the exercise of the governing body's police power to accomplish the desired end unless there is a plain violation of the citizens' constitutional rights.

*Knowles v. City of Aiken*, 305 S.C. 219, 224, 407 S.E.2d 639, 642 (1991) (internal citations omitted). Modern legal treatises frequently define a "Planned District" as a "Planned Unit Development."

"Planned unit development" means an area of land, controlled by a landowner, to be developed as a single entity for a number of dwelling units, and commercial and industrial uses, if any, the plan for which does not correspond in lot size, bulk, or type of dwelling or commercial or industrial use, density, lot coverage and required open space to the regulations established in any one or more districts created, from time to time, under the provisions of a municipal zoning ordinance enacted pursuant to the conventional zoning enabling act of the state.

Julian Conrad Juergensmeyer & Thomas E. Roberts, *Land Use Planning and Development Regulation Law* 283 (2007). This definition is not dissimilar to South Carolina Code Section 6–29–740.

The essential question is, therefore, does the Charleston County Ordinance # 1300 conflict with the Charleston County Comprehensive Plan or with the ZLDR? And, if so, can the County Council enact an Ordinance which overrides the perceived conflict?

Because of its flexibility as a land use approval mechanism, the PUD may create a conflict with the formal land use and intensity designations of a comprehensive land use plan. The extent to which such a conflict is fatal depends on whether the comprehensive plan in the particular jurisdiction is considered advisory only, or whether state legislation mandates that local zoning regulations be consistent with the comprehensive plan. In those states in which the comprehensive plan is advisory only, the courts have reject-

ed arguments that approval of a PUD was invalid because it was inconsistent with the comprehensive plan or amounted to spot zoning.

*Brian W. Blaesser, Discretionary Land Use Controls: Avoiding Invitations to Abuse of Discretion* 288–289 (2009 Ed.).

Code Section 6–29–720(B) requires that in adopting a zoning ordinance, the regulations must be made in accordance with the comprehensive plan for the jurisdiction. The comprehensive plan for Charleston County clearly states that the land use plan area designations and residential density guidelines are **recommendations** to the County Council (see County of Charleston Comprehensive Plan Section 3–2–5b and Section 3–2–8(4)). Similarly, in *Evans v. Teton County*, 139 Idaho 71, 73 P.3d 84 (2003), a neighbor challenged approval of a planned unit development and subdivision on the basis of nonconformity with the local plan. The Supreme Court of Idaho discussed the relationship as follows:

A comprehensive plan is not a legally controlling zoning law, it serves as a guide to local government agencies charged with making zoning decisions .... The "in accordance with" language of [the zoning enabling legislation] does not require zoning decisions to strictly conform to the land use designations of the comprehensive plan .... However, a board of county commissioners cannot ignore their comprehensive plan when adopting or amending zoning ordinances .... Whether approval of a zone change is "in accordance with" the comprehensive plan is a question of fact, which can only be overturned when the factual findings supporting the zone change are clearly erroneous.

Julian Conrad Juergensmeyer & Thomas E. Roberts, *Land Use Planning and Development Regulation Law* 283 (2007).

The court conducted its review on the basis of a strong presumption of validity and proceeded on the basis that it must affirm the Board of Commissioners unless it violated constitutional or statutory standards, exceeded its statutory authority, followed unlawful procedures, was not supported by substantial evidence, or was arbitrary and capricious. In other words the courts used the "fairly debatable" standard accorded to legislative decisions.

I disagree with the majority's holding that the Charleston County Council cannot modify or supersede its own zoning ordinance, if done within the confines of South Carolina Code Section 6–29–740. The statute plainly states:

Planned development districts may provide for variations from other ordinances and the regulations of other established zoning districts concerning use, setbacks, lot size, density, bulk, and other requirements to accommodate flexibility in the arrangement of uses for the general purpose of promoting and protecting the public health, safety, and general welfare.

And, when adopted, the planned development district becomes a new and distinct zoning district.

Ordinance # 1300 found "... after thorough consideration, the County Planning Commission recommended in favor of the proposed rezoning; ... the rezoning complies in all respects with Article 3.4 of the Charleston County Zoning and Land Development Regulations; ... the development plan meets the objectives of Article 3.5 the Charleston County Zoning and Land Development Regulations; ... and the development plan conforms to and implements the Charleston County Comprehensive Plan."

In my opinion, the Court of Appeals correctly ruled that the County Council's actions were authorized and not arbitrary, unreasonable, or in devious abuse of its discretion if the action of the Council in adopting the ordinance was fairly debatable.