790 S.E.2d 919

**FIRST SOUTH BANK, Respondent,**

v.

**John E. ROSENBERG and Philip J. Brust, Defendants,**

Of whom the Estate of Philip J. Brust is the Appellant.

**Appellate Case No. 2015–000035**
**Opinion No. 5437**

Court of Appeals of South Carolina.

Heard May 9, 2016
Filed August 3, 2016

Robert Ernest Sumner, IV and E. Brandon Gaskins, both of Moore & Van Allen, PLLC, of Charleston, for Appellant.

Jeffrey L. Silver and Taylor Anthony Peace, both of Tyler Jackson Peace & Silver, LLC, of Columbia, for Respondent.

WILLIAMS, J.

The estate of Philip J. Brust[1] appeals the circuit court's grant of summary judgment in favor of First South Bank (First South) as well as its denial of Brust's motion to amend his answer and counterclaim. Brust argues the court erred in (1) granting First South's motion for summary judgment because it ignored questions of fact regarding the scope of authority granted under a specific limited power of attorney (the POA), Brust's knowledge of a guaranty's scope, the effect of subsequent loan modifications, and Brust's proposed counterclaims against First South; and (2) denying Brust's motion to amend because it incorrectly relied upon the doctrine of res judicata rather than deciding the motion under Rule 15, SCRCP. We affirm as modified.

---

1. Philip J. Brust died during the pendency of the underlying action, and his estate was substituted as a party to the action. For the purposes of this opinion, we refer to Brust and his estate simply as "Brust."

## FACTS/PROCEDURAL HISTORY

This appeal arises from a loan (the Loan) between First South and Ecological Investments, LLC (Ecological), for which First South obtained separate personal guaranties from Brust (the Guaranty) and John Rosenberg. Brust and Rosenberg were both members of Ecological. In 2005, Ecological owned 82.68 acres in Jasper County (the Property), an area that Ecological intended to convert into a "Butterfly Kingdom" for the conservation of butterflies. Prior to becoming involved with First South, Ecological obtained a loan from a separate bank in 2001.[2] First South offered to refinance Ecological's existing loan in 2005, providing a $2.6 million interest-only loan with a two-year term.

On January 9, 2006, First South issued a letter (the Commitment Letter) to Rosenberg and Brust, explaining First South was "pleased to commit to Ecological ... a loan commitment." The Commitment Letter set forth pertinent information related to liabilities and the Loan, including that "[p]ayment of the Loan shall be unconditionally guaranteed, jointly and severally by [Rosenberg and Brust]." The Commitment Letter further stated that, upon its acceptance, it "shall become an integral part of the Loan documents." Rosenberg and Brust signed the Commitment Letter in their individual capacities.

Brust executed the POA on January 25, 2006, appointing Finger or Rosenberg as his true and lawful attorney and granting Finger and Rosenberg the authority

> to execute any and all documents, and to perform any lawful act or to execute or amend any document, instrument, or thing, which may be involved in the financing of [the Property], including, but not necessarily limited to, the power to execute ... any document, instrument, contract, [n]ote, [m]ortgage, agreement, assignment, affidavit, disclosure, etc[etera] ... or to execute any such other documents as may be necessary to close the [L]oan with First South Bank in the original principal sum of $2,600,000.00.

---

**2.** According to Terry Finger, Brust's attorney, Brust executed a power of attorney in 2001, granting Finger the authority to act as Brust's attorney-in-fact and authorizing Finger to execute a guaranty.

First South and Ecological closed the Loan on February 2, 2006. At the closing, Rosenberg executed his personal guaranty as well as the Guaranty, signing as Brust's attorney-in-fact.[3] The Guaranty, executed to induce First South to make loans to Ecological, stated the following:

> [Brust] absolutely and unconditionally guarantees [First South] the full and prompt payment when due ... of the debts, liabilities[,] and obligations as follows:
>
> . . . .
>
> [Brust] guarantees to [First South] the payment and performance of each and every debt, liability[,] and obligation of every type and description [that Ecological] may now or at any time hereafter owe to [First South] (whether ... now exist[ing] or ... hereafter created or incurred ...).
>
> . . . .
>
> The liability of [Brust] shall not be affected or impaired by ... any one or more extensions or renewals of [i]ndebtedness (whether ... for longer than the original period) or any modification of the interest rates, maturities[,] or other contractual terms applicable to any [i]ndebtedness ....

Ecological defaulted under the Loan on November 30, 2012. On March 8, 2013, First South filed a summons and complaint against Rosenberg and Brust, claiming the guaranties induced it into making the Loan, and Rosenberg and Brust were in default under their respective guaranties. First South requested judgment against Brust and Rosenberg for the remaining amount due under the terms of the Loan.[4]

Brust filed an answer to the complaint and asserted, in pertinent part, the following affirmative defenses:

> 20. [First South's] claim is barred, in whole or in part, because [its] alleged losses are the result of [its] failure to follow its own policies and procedures and negligence in the

---

**3.** Although Brust did not attend the closing, First South was unaware of his absence until after receipt of the closing documents. Additionally, no First South representative attended the closing.

**4.** Rosenberg consented to summary judgment against him on October 2, 2013. Accordingly, Rosenberg was not involved in the matter after this date and is not a party to this appeal.

underwriting, approval[,] and administration of the [L]oan

. . . .

. . . .

23. [Defendant] Brust should be released from any obligations under the Guaranty . . . to the extent [First South] breached its duty of good faith and fair dealing to . . . Brust and to the extent [First South] had knowledge or should have known that . . . Brust was being deceived by . . . Rosenberg regarding the [L]oan and collateral or that . . . Brust had been induced to enter into the Guaranty in ignorance of facts that materially increased his risks under the Guaranty.

Thereafter, First South filed a motion for summary judgment as to Brust on all claims. Brust filed a memorandum in opposition to First South's motion, claiming (1) no apparent or implied authority existed because First South did not rely upon the POA, and (2) no ratification occurred because Brust had no knowledge of the Guaranty's terms and never affirmatively acted to accept the Guaranty.

Brust later deposed Finger and Patrick Wright, First South's vice president, who stated it was unnecessary for the Guaranty to cover "continuing" and "unlimited" debts, liabilities, and obligations. Additionally, Wright stated he did not attend the closing or review the Guaranty prior to the closing.

Subsequently, Brust filed a motion to amend his answer pursuant to Rule 15(a), SCRCP, claiming the amendments neither raised novel legal issues nor prejudiced First South. With the motion, Brust attached his proposed amended answer, in which he sought to assert the following counterclaims against First South:

90. First South breached [its duty to act reasonably and comply with standard banking practices] by failing to adhere to its own policies and procedures, and failing to comply with the standard banking practices for the underwriting, closing[,] and administration of the loans in question.

. . . .

95. First South has breach[ed] any contractual obligations that exist pursuant to the Guaranty or otherwise by failing to adhere to the specific contractual obligations set forth in

the Guaranty and for breaching the covenant of good faith and fair dealing . . . .

Four days after Brust filed his motion to amend, the circuit court held a hearing on First South's motion for summary judgment.[5] At the hearing, First South contended the POA was unambiguous, Rosenberg had the authority to bind Brust under the Guaranty, and Brust was responsible for the debt. Brust asserted the following arguments in response: Rosenberg did not have actual authority to bind Brust under the Guaranty because the Guaranty's terms exceeded the scope permitted by the POA, and the POA was required to specifically grant authority to execute a Guaranty; no apparent authority existed because First South did not rely upon the POA; the Guaranty unconditionally guaranteed any future debts, which was not permitted by the POA; First South did not know of the POA's existence or that Rosenberg signed the Guaranty on behalf of Brust until after the closing, showing it did not rely upon the POA; any reliance by First South was unreasonable because it failed to follow standard banking procedures in determining Rosenberg's authority; and material modifications and "changes" to the Loan released Brust from liability under the Guaranty.

According to Brust, most of these issues involved questions of fact that should not be determined at the summary judgment stage. Brust also stated, "[W]e did raise affirmative defenses . . . [a]nd so we decided to re-style it as a counterclaim . . . . So all of those allegations were pled . . . [, and w]e intend to re-style them as counterclaims as soon as the court can hear us on th[e motion to amend]." The circuit court took the matter under advisement.

The circuit court subsequently issued an order granting First South's motion for summary judgment. The court found, *inter alia*, Brust's proposed counterclaims were identical to two of his original defenses, the POA vested in Rosenberg the authority to sign the Guaranty on Brust's behalf, and Ecological defaulted under the Loan. The court concluded (1) the

---

5. Brust did not object to the circuit court ruling upon the motion for summary judgment prior to hearing arguments on the motion to amend. Instead, Brust agreed that the summary judgment motion was the only matter before the court at this hearing.

POA was clear and unambiguous and granted Rosenberg actual authority to sign the Guaranty on Brust's behalf, (2) Rosenberg had apparent authority to bind Brust under the Guaranty, (3) First South relied upon Brust's representations when it closed the loan, (4) Brust ratified the Guaranty by enjoying the Loan's benefits and not repudiating the Guaranty, (5) First South breached no duty, (6) no renewal or modification released Brust from liability under the Guaranty, and (7) the proposed counterclaims "contain[ed] the same material allegations as the defenses set forth in the [original answer] ... and shall be treated as the defenses contained in the [original a]nswer and disposed of."

Thereafter, the circuit court held a hearing on Brust's motion to amend. Brust then filed a motion to alter or amend the order granting summary judgment, alleging a multitude of errors in the court's order. The court issued an order denying the motion to amend, ruling the counterclaims "would prejudice [First South] and force [it] to re-litigate matters barred by res judicata." One week later, the court denied Brust's motion to alter or amend the grant of summary judgment in favor of First South. This appeal followed.

## ISSUES ON APPEAL

I. Did the circuit court err in granting summary judgment in favor of First South?

II. Did the circuit court err in designating Brust's proposed counterclaims as defenses?

III. Did the circuit court err in denying Brust's motion to amend?

## LAW/ANALYSIS

### I. Grant of Summary Judgment

First, Brust argues the circuit court erred in finding no genuine issue of material fact existed as to the scope of the POA and Brust's liability under the Guaranty. We disagree.

"When reviewing a grant of summary judgment, appellate courts apply the same standard applied by the [circuit] court pursuant to Rule 56(c), SCRCP." *Turner v. Milliman*, 392 S.C. 116, 121–22, 708 S.E.2d 766, 769 (2011). Rule 56(c), SCRCP, provides summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogato-

ries, and admissions on file, together with the affidavits, if any, show ... no genuine issue [exists] as to any material fact and that the moving party is entitled to a judgment as a matter of law." "In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the nonmoving party." *Harrington v. Mikell*, 321 S.C. 518, 521, 469 S.E.2d 627, 629 (Ct. App. 1996). "The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact." *Singleton v. Sherer*, 377 S.C. 185, 197, 659 S.E.2d 196, 202 (Ct. App. 2008). Once the moving party meets this burden, "the opponent cannot simply rest on mere allegations or denials contained in the pleadings," but rather "must come forward with specific facts showing ... a genuine issue for trial." *Id.* at 197–98, 659 S.E.2d at 203.

## A. Rosenberg's Actual Authority

Brust argues the circuit court misinterpreted the POA by refusing to recognize it was susceptible to more than one interpretation. According to Brust, other jurisdictions have been "especially cautious" in recognizing an agent's ability to bind a principal under a guaranty, and this court should adopt the position that the authority to bind under a guaranty must be expressly granted in the power of attorney. Brust further insists the POA's language was ambiguous as to whether Rosenberg had actual authority to bind Brust to the Guaranty.[6] We disagree.

 "A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal." *Watson v. Underwood*, 407 S.C. 443, 454, 756 S.E.2d 155, 161 (Ct. App. 2014) (quoting *In re Thames*, 344 S.C. 564, 569, 544 S.E.2d 854, 856 (Ct. App. 2001)). This court has previously concluded that "an action to interpret a power of attorney is similar to an

---

6. In arguing the POA was ambiguous, Brust analyzes facts beyond the POA's four corners, explaining the 2001 power of attorney specifically stated "guaranty," but the POA did not; the same attorney drafted both powers of attorney; and according to Wright's deposition, the Guaranty was not necessary to the closing of the Loan.

action to interpret a contract" and, thus, "is an action at law." *Id.*

"The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract." *Id.* at 454–55, 756 S.E.2d at 161 (quoting *Sphere Drake Ins. Co. v. Litchfield*, 313 S.C. 471, 473, 438 S.E.2d 275, 277 (Ct. App. 1993)). Although the construction of an ambiguous contract is a question of fact, the interpretation of an unambiguous contract is a question of law. *Bennett & Bennett Constr., Inc. v. Auto Owners Ins. Co.*, 405 S.C. 1, 4, 747 S.E.2d 426, 427 (2013). This court is "without authority to alter an unambiguous contract by construction or to make new contracts for the parties." *S.C. Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC*, 379 S.C. 645, 655, 667 S.E.2d 7, 13 (Ct. App. 2008).

Moreover, "[i]f a contract is unambiguous, extrinsic evidence cannot be used to give the contract a meaning different from that indicated by its plain terms." *Bates v. Lewis*, 311 S.C. 158, 161 n.1, 427 S.E.2d 907, 909 n.1 (Ct. App. 1993). "Whe[n] the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *Whitlock v. Stewart Title Guar. Co.*, 399 S.C. 610, 615, 732 S.E.2d 626, 628 (2012) (quoting *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009)). "A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause." *McGill*, 381 S.C. at 185, 672 S.E.2d at 574. This court's duty is to enforce the contract made by the parties regardless of the parties' failure to carefully guard their rights. *Watson*, 407 S.C. at 455, 756 S.E.2d at 162.

In the instant case, the circuit court found the POA was unambiguous and permitted Rosenberg to execute the Guaranty on behalf of Brust. We hold Brust failed to demonstrate a genuine issue of material fact as to the POA's ambiguity and, therefore, reject Brust's argument that Rosenberg had no actual authority. In determining Brust and Rosenberg's intent, we find the POA's language unambiguously granted Rosenberg the authority "to execute any and all documents . . . or to execute or amend any document, instru-

ment, or thing, which may be involved in the financing of [the Property]." *See Watson*, 407 S.C. at 454–55, 756 S.E.2d at 161 ("The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract." (quoting *Sphere Drake Ins. Co.*, 313 S.C. at 473, 438 S.E.2d at 277)).

Although Brust contends the POA was ambiguous, we note the only possible ambiguity in it was the language "as may be necessary to close the [L]oan." However, even if we construed the term "necessary"—or the entire phrase—as ambiguous, this single term or phrase did not render the POA ambiguous. Other language in the POA clearly permitted Rosenberg "to execute any ... documents ... involved in [the Property's] financing." *See McGill*, 381 S.C. at 185, 672 S.E.2d at 574 ("A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause."). Further, the POA did not limit Rosenberg's authority to execute documents necessary to close the Loan. Instead, the POA permitted the execution of any documents related to the Property's financing. Thus, we do not look beyond the POA to determine the parties' intent. *See Whitlock*, 399 S.C. at 615, 732 S.E.2d at 628 ("Whe[n] the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect." (quoting *McGill*, 381 S.C. at 185, 672 S.E.2d at 574)).

Given our finding that the POA was unambiguous, we reject Brust's invitation to go beyond the four corners of the POA in construing the document. *See Bates*, 311 S.C. at 161 n.1, 427 S.E.2d at 909 n.1 (noting extrinsic evidence cannot be used to give an unambiguous contract a meaning different from the meaning indicated by its plain terms). Moreover, we reject Brust's contention that an agent cannot sign a guaranty on behalf of his principal pursuant to a power of attorney unless the power of attorney specifically authorized the execution because this assertion is unsupported by South Carolina law. Accordingly, we affirm the circuit court's grant of summary judgment as to this issue because Rosenberg possessed actual authority to bind Brust to the Guaranty's terms.[7]

---

7. Because our holding on the issue of actual authority is dispositive, we need not reach the issues of apparent authority and ratification. *See*

## B. Modifications Resulting in Release from Liability

Brust further contends the circuit court erred in finding subsequent modifications did not release him from liability under the Guaranty. According to Brust, material changes to the Loan and First South's failure to communicate these changes—in violation of its banking policies—released Brust from liability under the Guaranty. We disagree.

██ "A guaranty is a contract." *CoastalStates Bank v. Hanover Homes of S.C., LLC*, 408 S.C. 510, 518, 759 S.E.2d 152, 157 (Ct. App. 2014) (quoting *TranSouth Fin. Corp. v. Cochran*, 324 S.C. 290, 294, 478 S.E.2d 63, 65 (Ct. App. 1996)). As noted above, "[t]he cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract." *Watson*, 407 S.C. at 454–55, 756 S.E.2d at 161 (quoting *Sphere Drake Ins. Co.*, 313 S.C. at 473, 438 S.E.2d at 277). "Whe[n] the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect." *Id.* at 455, 756 S.E.2d at 161 (quoting *Jordan v. Sec. Grp., Inc.*, 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993)).

██ We find no genuine issue of material fact exists as to whether subsequent modifications of the Loan released Brust from the Guaranty's liability. Under the Guaranty, Brust guaranteed payment of the indebtedness, and his liability was not "affected by ... any one or more extensions or renewals of [i]ndebtedness or any modification of the ... contractual terms." Accordingly, a review of the Guaranty reveals no modification or renewal of the Loan released Brust from liability. *See id.* at 455, 756 S.E.2d at 161 (noting that clear and unambiguous language in a contract determines the contract's force and effect).[8] Therefore, we affirm the circuit court as to this issue.

---

*Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues on appeal when the disposition of a prior issue is dispositive).

8. To the extent Brust argues First South was liable for violating its own banking policies by not obtaining a new guaranty for each modification

## II. Designation of Counterclaims as Defenses

■ Additionally, Brust argues the circuit court erred in employing Rule 8(c), SCRCP, to classify his proposed counterclaims as defenses. Brust reasons (1) the seventh and tenth defenses were not counterclaims, and (2) the court should have ruled upon his motion to amend to add counterclaims before classifying the two counterclaims as defenses.[9] Although we agree the court erred in classifying the counterclaims as defenses, we find no error in its application of Rule 8(c).

> A pleading which sets forth a . . . counterclaim . . . shall contain (1) a short and plain statement of the grounds . . . upon which the court's jurisdiction depends, unless the court already has jurisdiction to support it, (2) a short and plain statement of the facts showing that the pleader is entitled to relief, and (3) a prayer or demand for judgment for the relief to which he deems himself entitled.

Rule 8(a), SCRCP. "A party shall state in short and plain terms the facts constituting his defenses to each cause of action asserted . . . ." SCRCP 8(b), SCRCP. Rule 8(c), SCRCP, sets forth a nonexclusive list of affirmative defenses a party must plead, but it does not include negligence or breach of contract. "An affirmative defense conditionally admits the allegations of the complaint, but asserts new matter to bar the action. In other words, it assumes all elements of the plaintiff's case have been established." *O'Neal v. Carolina Farm Supply of Johnston, Inc.*, 279 S.C. 490, 494, 309 S.E.2d 776, 779 (Ct. App. 1983) (internal citation omitted). "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court shall treat the pleading as if there had been a proper designation." Rule 8(c), SCRCP.

---

of the Loan, we find Brust abandoned this argument at trial by specifically stating First South owed Brust no duty to comply with its own policies. We further note our court has squarely rejected the argument that, in a normal creditor-debtor relationship, a bank owes a fiduciary duty to a debtor. *See Regions Bank v. Schmauch*, 354 S.C. 648, 671, 582 S.E.2d 432, 444 (Ct. App. 2003) (providing that our courts have held "the normal relationship between a bank and its customer is one of creditor-debtor and not fiduciary in nature").

9. Although First South argues the defenses were correctly classified as counterclaims, the circuit court's ruling stated the proposed counterclaims "are and shall be treated as the defenses contained in the answer."

■ At the outset, we find the circuit court incorrectly determined Brust's proposed counterclaims constituted defenses. In our view, the court should have classified Brust's defenses as counterclaims. The seventh defense and the first proposed counterclaim contained almost identical language, each setting forth a claim for negligence. Similarly, the tenth defense and second proposed counterclaim contained almost identical language, each setting forth a breach of contract counterclaim. Moreover, the seventh and tenth defenses included demands for the court to bar First South's claims "in whole or in part" based upon facts pled in the answer.

■ Given the similar language, as well as the fact that the circuit court already had jurisdiction over the matter, we find categorizing the defenses as counterclaims pursuant to Rule 8(c) was the correct action. *See* Rule 8(a) (requiring a counterclaim include a "statement of the facts showing that the pleader is entitled to relief" and "a demand for judgment for the relief"); *id.* (requiring a counterclaim state the court's jurisdictional grounds unless the court already has jurisdiction); Rule 8(c) ("When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court shall treat the pleading as if there had been a proper designation."). Accordingly, we affirm as modified the court's ruling because its application of Rule 8(c) was proper. *See* Rule 220(c), SCACR (noting this court may affirm any ruling upon any ground appearing in the record).[10]

## III. Motion to Amend

■ Finally, Brust contends the circuit court erred in denying his motion to amend the answer to include two

---

10. To the extent Brust argues the circuit court erred in not ruling upon his motion to amend prior to ruling upon First South's motion for summary judgment, we find this issue is not preserved for appellate review. At the summary judgment hearing, Brust failed to object to any issue regarding the procedure of the court's hearings on the motions. In fact, Brust conceded that the motion for summary judgment was the only issue before the court at the June 2014 hearing. *See Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [circuit] court to be preserved for appellate review.").

counterclaims against First South. According to Brust, the court mistakenly applied the doctrine of res judicata and, instead, should have analyzed his motion under Rule 15, SCRCP. We find no reversible error.

Given that Brust's proposed counterclaims raised the same assertions as his answer, we find any error in the circuit court's denial of his motion to amend harmless because the court disposed of these issues in its order granting summary judgment in favor of First South. *See McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987) ("Appellate courts recognize ... an overriding rule of civil procedure [that] says[ ] whatever doesn't make any difference, doesn't matter."). In other words, even if the court had granted Brust's motion to amend, it would have had no practical effect on the outcome of the case. We further note that, instead of arguing in favor of the motion to amend or requesting a continuance at the June 3, 2014 hearing for the court to first rule upon his motion to amend, Brust agreed that the only issue before the court was the motion for summary judgment. If Brust believed, as he now argues on appeal, that the additional counterclaims in his amended answer would have bearing on the court's summary judgment ruling, then we find it was incumbent upon him to object accordingly at that time. Thus, under these facts, we are unable to conclude the circuit court abused its discretion in denying Brust's motion to amend his answer. *See City of N. Myrtle Beach v. Lewis–Davis*, 360 S.C. 225, 232–33, 599 S.E.2d 462, 465 (Ct. App. 2004) (stating "a motion to amend is addressed to the sound discretion of the [circuit court]," and its "finding will not be overturned on appeal without an abuse of discretion" (quoting *Duncan v. CRS Sirrine Eng'rs, Inc.*, 337 S.C. 537, 542, 524 S.E.2d 115, 118 (Ct. App. 1999))).

## CONCLUSION

Based on the foregoing analysis, the circuit court's judgment is

**AFFIRMED AS MODIFIED.**

LOCKEMY, C.J., and MCDONALD, J., concur.