# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Daniel Lee Davis, individually and on behalf of all those similarly situated, Respondent,

v.

ISCO Industries, Inc., Appellant.

Appellate Case No. 2018-000857

---

Appeal From Spartanburg County
R. Keith Kelly, Circuit Court Judge

---

Opinion No. 5840
Heard December 8, 2020 – Filed August 4, 2021

---

**AFFIRMED**

---

Jeffrey Andrew Lehrer, of Ford & Harrison, LLP, of
Spartanburg, for Appellant.

John S. Simmons, of Simmons Law Firm, LLC, of
Columbia; John Belton White, Jr., Ryan Frederick
McCarty, and Marghretta Hagood Shisko, all of Harrison
White P.C., of Spartanburg, for Respondent.

---

**KONDUROS, J.:** ISCO Industries, Inc. appeals the circuit court's denial of its motion to compel arbitration in a suit its former employee, Daniel Lee Davis, brought against it following a data breach. ISCO contends the circuit court erred in determining an arbitration agreement did not apply due to the unforeseeable and outrageous tort exception and because Davis's negligence claim did not arise out of or relate to his employment relationship with ISCO. We affirm.

## FACTS/PROCEDURAL HISTORY

ISCO is a Kentucky based corporation, which provides global customized piping solutions. It has locations and employees in over thirty-five states. Davis worked for ISCO as a mechanic and fusion technician in South Carolina from March 2007 until March 2015. At the start of his employment, ISCO required Davis to provide personal identifying information including his Social Security number. He also signed an arbitration agreement. In the arbitration agreement, he agreed to exclusively settle by arbitration "any and all claims, disputes or controversies arising out of or relating to my candidacy for employment, employment and/or cessation of employment with ISCO."

On March 2, 2016, an employee in ISCO's human resources department received an e-mail requesting employees' "2015 IRS Form W-2 data" purportedly from a senior executive at ISCO. The employee gathered and e-mailed the requested data. The information included the Social Security numbers, addresses, and compensation and tax withholding information of current and former ISCO employees. Shortly thereafter, an employee at ISCO realized the e-mail was actually from an outside third party who had fraudulently disguised his e-mail address. On March 4, 2016, ISCO notified the affected employees of the data breach. ISCO provided these employees with free identity theft protection services through LifeLock, which it later renewed. The data breach affected 449 current and former employees throughout thirty-five states.

Davis filed an action against ISCO on September 13, 2017, alleging claims for breach of implied contract and negligence. Davis filed the action on behalf of all current and former ISCO employees whose personal identifying information was released as a result of the data breach. He alleged ISCO had a duty to exercise reasonable care in holding, securing, and protecting that personal identifying information; it was foreseeable Davis and the others would suffer substantial harm if ISCO employed inadequate safety practices for securing personal identifying information; and as a result of ISCO's negligence, Davis and others suffered and will continue to suffer damages and injury, including out-of-pocket expenses and the loss of productivity and enjoyment as a result of spending time monitoring and correcting consequences of the data breach.

ISCO filed a motion to dismiss and compel arbitration. Davis filed an amended complaint removing his cause of action for breach of contract. ISCO filed a motion to dismiss Davis's complaint in the event the court did not compel

arbitration, asserting Davis lacked standing and failed to state facts sufficient to establish a negligence claim or to support an award of punitive damages or attorney's fees. Davis filed a response in opposition to ISCO's motions.

The circuit court held a hearing on both of ISCO's motions on February 23, 2018. The court determined the arbitration agreement was not applicable to Davis's cause of action.[1] The court found:

> The arbitration agreement that [Davis] signed applied to claims "arising out of or relating to my candidacy for employment, employment and/or cessation of employment with ISCO," but [Davis's] claims in this case arise out of [ISCO's] release of the personal identifying information of [Davis] and others to cyber-criminals. The [c]ourt finds that there is no relationship between the subject matter of [Davis's] claims in this case and the arbitration agreement, which relates to employment. Like the [c]ourt in *Aiken*,[2] this [c]ourt holds that [Davis's] claims in this case are "for unanticipated and unforeseeable tortious conduct" and are, therefore, not within the scope of the arbitration agreement.

(citation omitted).

This appeal followed.

**STANDARD OF REVIEW**

Unless the parties otherwise provide, "[t]he question of the arbitrability of a claim is an issue for judicial determination." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). Determinations of arbitrability are subject to de novo review, but if any evidence reasonably supports the circuit court's factual findings, this court will not overrule those findings. *Stokes v. Metro. Life Ins. Co.*, 351 S.C. 606, 609-10, 571 S.E.2d 711, 713 (Ct. App. 2002).

---

[1] The circuit court also denied ISCO's motion to dismiss, but ISCO did not appeal that ruling.
[2] *Aiken v. World Fin. Corp. of S.C.*, 373 S.C. 144, 644 S.E.2d 705 (2007) (providing an outrageous torts exception to arbitration enforcement in South Carolina).

**LAW/ANALYSIS**

ISCO asserts the circuit court erred by denying its motion to compel arbitration by ruling Davis's negligence claim did not arise out of or relate to his employment relationship with ISCO. It argues there was a significant relationship between Davis's employment relationship and the conduct in this case. We disagree.

> [S]tate law determines questions "concerning the validity, revocability, or enforceability of contracts generally," *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987), but the Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)[, *superseded by statute on other grounds as stated in Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*, 128 F.3d 504, 506 (7th. Cir. 1997)].

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (citations omitted). "These statutes constitute 'a congressional declaration of liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).

"We must address questions of arbitrability with a healthy regard for the federal policy favoring arbitration." *Towles v. United HealthCare Corp.*, 338 S.C. 29, 41, 524 S.E.2d 839, 846 (Ct. App. 1999). "Therefore, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including "'the construction of the contract language itself.'" *Id.* (quoting *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273-74 (4th Cir. 1997)). "Motions to compel arbitration should not be denied unless the arbitration clause is not susceptible of any interpretation that would cover the asserted dispute." *Id.* at 41-42, 524 S.E.2d at 846. However, our supreme court recently noted that "statements that the law 'favors' arbitration mean simply that courts must respect and enforce a contractual provision to arbitrate as it respects and enforces all contractual provisions. There is, however, no public policy—federal or state—'favoring' arbitration." *Palmetto*

*Constr. Grp., LLC v. Restoration Specialists, LLC*, 432 S.C. 633, 639, 856 S.E.2d 150, 153 (2021), *reh'g denied*, S.C. Sup. Ct. Order dated Apr. 20, 2021.

"Generally, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Int'l Paper Co.*, 206 F.3d at 416 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). "Arbitration is available only when the parties involved contractually agree to arbitrate." *Berry v. Spang*, 433 S.C. 1, 11-12, 855 S.E.2d 309, 315 (Ct. App. 2021) (quoting *Towles*, 338 S.C. at 37, 524 S.E.2d at 843-44), *reh'g denied*, S.C. Ct. App. Order dated Mar. 26, 2021, *petition for cert. filed*. "Arbitration rests on the agreement of the parties, and the range of issues that can be arbitrated is restricted by the terms of the agreement." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596-97, 553 S.E.2d 110, 118 (2001). "Determining whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Towles*, 338 S.C. at 41, 524 S.E.2d at 846. "An arbitration clause is a contractual term, and general rules of contract interpretation must be applied to determine a clause's applicability to a particular dispute." *Id.* "The construction of a clear and unambiguous contract is a question of law for the court to determine." *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 594, 762 S.E.2d 705, 710 (2014) (emphasis omitted). "The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract." *First S. Bank v. Rosenberg*, 418 S.C. 170, 180, 790 S.E.2d 919, 925 (Ct. App. 2016) (quoting *Watson v. Underwood*, 407 S.C. 443, 454-55, 756 S.E.2d 155, 161 (Ct. App. 2014)).

"When a party invokes an arbitration clause after the contractual relationship between the parties has ended, the parties' intent governs whether the clause's authority extends beyond the termination of the contract." *Towles*, 338 S.C. at 41, 524 S.E.2d at 846. "A broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Zabinski*, 346 S.C. at 598, 553 S.E.2d at 119. "To decide whether an arbitration agreement encompasses a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the broad arbitration clause, regardless of the label assigned to the claim." *Id.* at 597, 553 S.E.2d at 118.

> [T]he mere fact that an arbitration clause might apply to matters beyond the express scope of the underlying

contract does not alone imply that the clause should apply to every dispute between the parties. For example, a clause compelling arbitration for any claim "arising out of or relating to this agreement" may cover disputes outside the agreement, but only if those disputes relate to the subject matter of that agreement. On the other hand, if the clause contains language compelling arbitration of any dispute arising out of the relationship of the parties, it does not matter whether the particular claim relates to the contract containing the clause; it matters only that the claim concerns the relationship of the parties. Under *Zabinski*, such a clause would have the broadest scope because it could be interpreted to apply to every dispute between the parties.

*Vestry & Church Wardens of Church of Holy Cross v. Orkin Exterminating Co.*, 356 S.C. 202, 209-10, 588 S.E.2d 136, 140 (Ct. App. 2003) (citations omitted).

"Whether a particular claim is subject to arbitration has been examined in many cases . . . ." *New Hope Missionary Baptist Church v. Paragon Builders*, 379 S.C. 620, 629 n.7, 667 S.E.2d 1, 5 n.7 (Ct. App. 2008). In *Zabinski*, the supreme court found "any claim pursuant to the partnership agreement is arbitrable" because the arbitration agreement provided "'any controversy or claim arising out of the partnership agreement' should be settled by arbitration." 346 S.C. at 597, 553 S.E.2d at 119. The court determined "any tort claims between the partners that relate to the partnership agreement are arbitrable." *Id.* Further, the court held "the winding up of the partnership is covered by the arbitration agreement because it concerns issues that are the direct result of the partnership agreement." *Id.* at 597-98, 553 S.E.2d at 119. However, the court also determined "[d]espite South Carolina's presumption in favor o[f] arbitration, . . . the remaining . . . claims are not subject to arbitration because a significant relationship does not exist between the . . . claims and the partnership agreement." *Id.* at 598, 553 S.E.2d at 119. Those remaining claims included "the action between [two of the partners] involv[ing] a dispute over the purchase agreement, which is completely unrelated to the partnership agreement. . . . The facts involved in this controversy are completely independent of any dispute arising out of the partnership agreement and are not arbitrable." *Id.*

In *Landers v. Federal Deposit Insurance Corp.*, an employee, Landers, "claim[ed] he was constructively terminated from his employment as a result of [the CEO's]

tortious conduct towards him. [The employer and the CEO] moved to compel arbitration pursuant to the employment contract." 402 S.C. 100, 103, 739 S.E.2d 209, 210 (2013). "The trial court found that only Landers' breach of contract claim was subject to the arbitration provision, while his other four causes of action comprised of several tort and corporate claims were not within the scope of the arbitration clause." *Id.* Our supreme court "reverse[d] the trial court's order and h[e]ld that all of Landers' causes of action must be arbitrated," stating "Landers' pleadings provide a clear nexus between his claims and the employment contract sufficient to establish a significant relationship to the employment agreement." *Id.* The court determined "the claims are within the scope of the agreement's broad arbitration provision." *Id.*

The supreme court explained:

> Landers' tort claims bear a significant relationship to the Agreement. The Agreement contains not only monetary rights and obligations, but also articulates the duties and obligations of Landers and provides that Landers is subject to the direction of the employer, requiring him to diligently follow and implement all policies and decisions of the employer. Furthermore, the Agreement contemplates what constitutes cause for termination, including a "material diminution in [ ] powers, responsibilities, duties or compensation."
>
> Thus, in light of the breadth of the Agreement and the particular manner in which Landers has pled his underlying factual allegations, we find Landers' tort claims significantly relate to the Agreement. The perceived inability to perform one's *job* certainly relates to an *employment* contract. Even assuming the arbitrability of the claims was in doubt, which it is not, we cannot say with positive assurance that the arbitration clause is not susceptible of an interpretation that Landers' slander and intentional infliction of emotional distress claims are covered by the clause. Thus, we reverse the trial court's order denying Appellants' motion to compel the causes of action of slander and intentional infliction of emotional distress.

*Id.* at 111-12, 739 S.E.2d at 215 (alteration in original) (footnote omitted).

> We stress that our decision today is driven by the strong policy favoring arbitration, the nature of the Agreement, and Landers' underlying factual allegations. Certainly, we recognize that even the broadest of clauses have their limitations. However, Landers has essentially pled himself into a corner with respect to each of his claims. Indeed, he has provided a clear nexus between the underlying factual allegations of each of his claims and his inability to perform the employment Agreement and the alleged breach thereof, such that all of his causes of action bear a significant relationship to the Agreement. Thus, we reverse the trial court with respect to Landers' remaining four causes of action and hold that each is to be arbitrated. In doing so, we also reject the trial court's alternative ruling that the claims are not subject to arbitration because they were not foreseeable.

*Id.* at 115-16, 739 S.E.2d at 217 (footnote omitted).

In the present case, the court found "there is no relationship between the subject matter of [Davis's] claims in this case and the arbitration agreement, which relates to employment." The arbitration agreement stated it applied to "any and all claims, disputes or controversies arising out of or relating to [Davis's] candidacy for employment, employment and/or cessation of employment with ISCO." Even though ISCO had Davis's personal identifying information only due to his previous employment with it, the grounds for his negligence claim—the human resources employee disclosing his information to hackers—do not truly relate to his employment. At the time Davis supplied his employer with his information in starting his employment, he would not have been expected to anticipate employer would reveal that information to hackers.

*Landers* is distinguishable from the present case as the facts underlying Landers's causes of action are completely different than those here. *See id.* at 112, 739 S.E.2d at 215 ("[I]n light of the breadth of the Agreement and the particular manner in which Landers has pled his underlying factual allegations, we find Landers' tort claims significantly relate to the Agreement. The perceived inability to perform one's *job* certainly relates to an *employment* contract."); *id.* at 115, 739 S.E.2d at 217 ("Landers has essentially pled himself into a corner with respect to

each of his claims. Indeed, he has provided a clear nexus between the underlying factual allegations of each of his claims and his inability to perform the employment Agreement and the alleged breach thereof, such that all of his causes of action bear a significant relationship to the Agreement.").

There was not a significant relationship between Davis's employment relationship and the conduct in this case. Therefore, the circuit court did not err in finding the arbitration agreement did not apply here. Accordingly, we affirm the circuit court's decision.[3]

**CONCLUSION**

The circuit court's decision to deny the motion to compel arbitration is

**AFFIRMED.**

**LOCKEMY, C.J., and MCDONALD, J., concur.**

---

[3] Based on our determination of this issue, we need not address ISCO's remaining arguments on appeal, which concern the denial of its motion to compel arbitration on the basis of the unforeseeable and outrageous tort exception. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).