# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Peter Michael Buonaiuto, Sr., individually, and of behalf of all others similarly situated, Appellant,

v.

The Town of Hilton Head Island, South Carolina, Respondent.

Appellate Case No. 2020-000687

———————

Appeal From Beaufort County
Marvin H. Dukes, III, Master-in-Equity

———————

Opinion No. 5990
Heard April 10, 2023 – Filed June 14, 2023

———————

**AFFIRMED**

———————

Taylor Meriwether Smith, IV, of Harrison, Radeker & Smith, P.A., of Columbia, for Appellant.

Curtis Lee Coltrane, of Coltrane & Wilkins, LLC, of Hilton Head Island, for Respondent.

———————

**LOCKEMY, A.J.:**  Peter Michael Buonaiuto, Sr., individually and on behalf of all others similarly situated, appeals the master-in-equity's (the master's) order granting summary judgment to the Town of Hilton Head Island (the Town).  On appeal, he argues the master erred in finding a "Contract for Professional Services" (the Contract) between the Town and the Hilton Head Island-Bluffton Chamber of Commerce (the Chamber) was not a contract for services as defined by the Town's Procurement Code.  We affirm.

**FACTS/PROCEDURAL HISTORY**

The Accommodations Tax (A-Tax) Act involves the imposition of a state sales tax on overnight sleeping accommodations. S.C. Code Ann. § 12-36-920 (2014 & Supp. 2022); *see also Thompson v. Horry County*, 294 S.C. 81, 82, 362 S.E.2d 646, 647 (Ct. App. 1987) ("The [A-Tax] Act was enacted to raise revenue for the purpose of promoting tourism and providing for facilities and services which enhance the ability of counties and municipalities to attract and provide for tourists."). A portion of the tax is remitted to the local government where it was collected and it must expend the A-Tax funds in accordance with the statutory provisions governing allocation. *See* S.C. Code Ann. § 12-36-2630(3) (2014 & Supp. 2022); S.C. Code Ann. §§ 6-4-10 to -35 (2004 & Supp. 2022); *DomainsNewMedia.com, LLC v. Hilton Head Island-Bluffton Chamber of Com.*, 423 S.C. 295, 298, 814 S.E.2d 513, 515 (2018). Specifically, the A-Tax Act requires the local government to "select at least one organization—referred to as the designated marketing organization (DMO)—to manage the expenditure of the funds; however, the local governments must ensure the funds are 'used only for advertising and promotion of tourism.'" *DomainsNewMedia.com*, 423 S.C. at 298, 814 S.E.2d at 515 (quoting § 6-4-10(3)).

In December 2015, the Town entered into the Contract, titled "Contract for Professional Services," with the Chamber, which was for a five-year term that could be extended for an additional five-year term if the Chamber complied with the performance standards as set forth in the Contract. The Contract stated the Town entered into it so the Chamber would satisfy certain compliance and operating standards and noted the Chamber was an independent contractor. The Contract required the Chamber to perform various tasks, including (1) managing and directing the expenditure of a statutorily mandated special fund for advertising and promotion of tourism (the Fund); (2) submitting a budget of planned expenditures for the Fund and a marketing plan, which would include a public relations plan and social media plan, for each fiscal year; (3) submitting a DMO report containing a schedule of revenues of the accommodations tax and expenses for each fiscal year; (4) adopting policies and procedures and operating in a manner which satisfied the standards set forth by Destination Marketing Association International; (5) providing certain tourism metrics and reports; and (6) making at least two public presentations and two additional reports to the Accommodations Tax Committee each fiscal year. The Contract required the Town to comply with state accommodation tax laws and to properly expend the Fund to the Chamber in order for the budget and marketing plan to be implemented.

In November 2016, Buonaiuto, who operated the Hilton Head Visitors and Convention Bureau, Inc., filed a summons and complaint. He argued the Town violated the Procurement Code because it failed to publicly bid or subject the Contract to its code and maintained the Procurement Code did not exempt certain contracts or other expenditures of public money from it. He sought a declaration that the Town violated the Procurement Code, rescission of the Contract, an injunction requiring the Town to subject any proposed DMO contract to the Procurement Code, and an award of costs and attorney's fees. Buonaiuto attached the Contract to his complaint.

In its answer, the Town, in addition to denying the material allegations in the complaint, argued section 6-4-10 of the South Carolina Code controlled distribution of the Fund and section 4-12-20 of the Municipal Code of the Town of Hilton Head Island (1998) stated the Chamber shall be the DMO. After the case was referred to the master, the Town filed a motion for summary judgment, arguing neither the distribution of the Fund nor the Contract qualified as "procurement" as defined in section 11-1-121 of the Municipal Code of the Town of Hilton Head Island (1983). The Town further asserted (1) there was no evidence the Chamber provided services to it under the Contract; rather, the Contract set out reporting requirements to demonstrate the Chamber's compliance with section 6-4-10 of the South Carolina Code and (2) had the Chamber delivered services to it, the Chamber would have violated section 6-4-10, which restricted the use of the Fund. The Town also argued the selection of the organization to manage the Fund was not the procurement of services; rather, it simply fulfilled the statutory mandate in section 6-4-10(3) of the South Carolina Code. Finally, citing *DomainsNewMedia.com*, it argued section 6-4-10 of the South Carolina Code applied over the Procurement Code because whereas section 6-4-10 was a specific statute, the Procurement Code was a general ordinance.

The Town attached affidavits to its summary judgment motion, including those from John Troyer, the director of finance for the Town; William Miles, the president and chief operating officer for the Chamber; and Stephen Riley, the town manager for the Town. Troyer stated the receipt or distribution of the Fund did not appear in the annual budget and the town council did not vote on the distribution of it. Riley stated the Town had no discretion in the establishment of the Fund and averred the Town had to distribute the entire fund to an organization meeting the requirements in section 6-4-10. Miles stated the Chamber had received the Fund since 1986 and was required to submit reports to the Town, including a budget of planned expenditures and a subsequent accounting of the expenditures. All of the affiants stated the Town and the Chamber entered into the Contract to ensure the

Chamber met compliance and operating standards and noted the Chamber was required to deliver information to the Town to demonstrate compliance. They also stated the Chamber did not provide services to the Town; rather, the Chamber used the funds for advertising and promotion of tourism, as required by section 6-4-10. Miles and Riley stated the plain language of section 6-4-10 prohibited using the Fund to provide services to the Town.

Buonaiuto also filed a motion for summary judgment, arguing the Contract's name and terms showed it was one for services and the Town violated its Procurement Code by not subjecting it to the code before ratification. He further argued "services" included (1) the management and direction of the expenditure of the Fund and (2) the submittal of a budget of planned expenditures and a marketing plan. Buonaiuto did not submit any supporting affidavits to his motion.

The master granted the Town's motion for summary judgment, finding the terms of the Contract and what it called for governed whether the Contract was one for services. He concluded the Procurement Code did not apply to the Contract because the Contract established the Chamber did not deliver services to the Town; rather, it set out reporting requirements to be followed by the Chamber to demonstrate its compliance with section 6-4-10(3) of the South Carolina Code. The master noted the plain language of section 6-4-10(3) did not allow the delivery of services. He further found the Town's selection of the organization to manage the Fund was not the procurement of services; rather, it was the fulfillment of statutory mandates imposed on the Town. Finally, the master concluded that under *DomainsNewMedia.com*, the Procurement Code, which was a general ordinance, did not apply to allocation and expenditure of the Fund because it was governed by a specific statute. This appeal followed.

## ISSUE ON APPEAL

When the master denied Buonaiuto's motion for summary judgment and granted the Town's motion pursuant to Rule 56(c), SCRCP, did the master err in determining the "Contract for Professional Services" was not "contract for services" pursuant to the Town's Procurement Code?

## STANDARD OF REVIEW

"The standard of review in a declaratory action is determined by the underlying issues." *Nationwide Mut. Ins. Co. v. Rhoden*, 398 S.C. 393, 398, 728 S.E.2d 477, 479 (2012). "In reviewing a grant of summary judgment, our appellate court applies the same standard as the trial court under Rule 56(c), SCRCP." *Woodson*

*v. DLI Props., LLC*, 406 S.C. 517, 528, 753 S.E.2d 428, 434 (2014). A trial court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "A grant of summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Town of Summerville v. City of North Charleston*, 378 S.C. 107, 109-10, 662 S.E.2d 40, 41 (2008).

"Where cross motions for summary judgment are filed, the parties concede the issue before us should be decided as a matter of law." *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011). "Questions of law may be decided with no particular deference to the trial court." *S.C. Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC*, 379 S.C. 645, 654, 667 S.E.2d 7, 12 (Ct. App. 2008). Furthermore, "[q]uestions of statutory interpretation are questions of law, which [this court is] free to decide without any deference to the court below." *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011); *see also Mikell v. County of Charleston*, 386 S.C. 153, 160, 687 S.E.2d 326, 330 (2009) ("When reviewing issues involving the construction of an ordinance, the determination of legislative intent is a matter of law.").

## LAW/ANALYSIS

Buonaiuto argues the master erred in determining the Contract was not one for services and would be subjected to the Town's Procurement Code. First, he asserts the Procurement Code provides that "[i]t shall apply to every expenditure of public funds irrespective of their source."[1] Second, Buonaiuto avers (1) the Contract's name provides some indication of its nature and (2) a review of the ordinary meaning of the Contract's words, requiring the Chamber to manage and expend the Fund, establish that it is one for services. Finally, Buonaiuto argues how the various persons of the Town's provided affidavits describe the Contract or A-Tax statutes is not relevant. We disagree.

"It is well settled that when interpreting an ordinance, legislative intent must prevail if it can be reasonably discovered in the language used." *Charleston Cnty. Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995). "An ordinance must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. In construing

---

[1] Hilton Head Island, S.C., Mun. Code § 11-1-113.

ordinances, the terms used must be taken in their ordinary and popular meaning." *Id.* at 68, 459 S.E.2d at 843 (citation omitted). "Further, where two provisions deal with the same issue, one in a general and the other in a more specific and definite manner, the more specific prevails.*" Mikell*, 386 S.C. at 160, 687 S.E.2d at 330. "When reviewing issues involving the construction of an ordinance, the determination of legislative intent is a matter of law." *Id.* "The courts will reject an interpretation of a[n] ordinance which leads to an absurd result which could not possibly have been intended by the lawmaking body." *Hist. Charleston Found. v. Krawcheck*, 313 S.C. 500, 507, 443 S.E.2d 401, 405-06 (Ct. App. 1994).

Section 6-4-10(3) of the South Carolina Code states 30% of the funds received by a municipality or county from the local A-Tax "must be allocated to a special fund and used only for advertising and promotion of tourism to develop and increase tourist attendance through the generation of publicity." Section 6-4-10(3) continues:

> To manage and direct the expenditure of these tourism promotion funds, the municipality or county shall select one or more organizations, such as a chamber of commerce, visitor and convention bureau, or regional tourism commission, which has an existing, ongoing tourist promotion program. . . . To be eligible for selection the organization must be organized as a nonprofit organization and shall demonstrate to the municipality or county that it has an existing, ongoing tourism promotion program or that it can develop an effective tourism promotion program. Immediately upon allocation to the special fund, a municipality or county shall distribute the tourism promotion funds to the organizations selected or created to receive them.

Section 6-4-10(3) requires the selected organization to submit for approval a budget of planned expenditures before the beginning of each fiscal year and an accounting of the expenditures at the end of each fiscal year.

The Procurement Code applies to public purchasing of supplies, services, and construction. *See* Hilton Head Island, S.C., Mun. Code § 11-1-113. The purpose of the Procurement Code is to "provide for the fair and equitable treatment of all purposes involved in public purchasing by the town, to maximize the purchasing value of public funds in procurement, and to provide safeguards for maintaining a procurement system of quality and integrity." *See* Hilton Head Island, S.C., Mun.

Code §11-1-112.

The Procurement Code defines contracts as "[a]ll types of town agreements, regardless of what they may be called, for the procurement of supplies, services, or construction." Hilton Head Island, S.C., Mun. Code § 11-1-121(5). Procurement is defined as "[b]uying, purchasing, . . . or otherwise acquiring any supplies, services, or construction" as well as "all functions that pertain to the obtaining of any supply, service, or construction, including description of requirements, selection and solicitation of sources, preparation and award of contract, and all phases of contract administration." Hilton Head Island, S.C., Mun. Code § 11-1-121(21). "Service" is defined as "[t]he furnishing of labor, time, or effort by a contractor, not involving the delivery of a specific end product other than reports which are merely incidental to the required performance." Hilton Head Island, S.C., Mun. Code § 11-1-121(30).

Section 4-12-10 of the Municipal Code states the chapter regarding the A-Tax funds was enacted pursuant to the authority in section 6-4-10(3) of the South Carolina Code and requires the Town to select "an organization to manage and direct the expenditure of the thirty (30) percent of the special fund for tourism promotion." Section 4-12-20 of the Municipal Code discusses the management of the Fund.

"The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract." *First South Bank v. Rosenberg*, 418 S.C. 170, 180, 790 S.E.2d 919, 925 (Ct. App. 2016) (quoting *Watson v. Underwood*, 407 S.C. 443, 454-55, 756 S.E.2d 155, 161 (Ct. App. 2014)). "Whe[n] the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *Id.* (quoting *Whitlock v. Stewart Title Guar. Co.*, 399 S.C. 610, 615, 732 S.E.2d 626, 628 (2012)).

We hold the master did not err in granting summary judgment. *See Woodson*, 406 S.C. at 528, 753 S.E.2d at 434 ("In reviewing a grant of summary judgment, our appellate court applies the same standard as the trial court under Rule 56(c), SCRCP."); *Town of Summerville,* 378 S.C. at 109-10, 662 S.E.2d at 41 ("A grant of summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."); *Wiegand*, 391 S.C. at 163, 705 S.E.2d at 434 ("Where cross motions for summary judgment are filed, the parties concede the issue before us should be decided as a matter of law."). We find the Procurement Code does not govern the Contract because the Contract is not the type of procurement agreement that would be subject to Title 11

of the Municipal Code.  Hilton Head Island, S.C., Mun. Code § 11-1-121.  *See Mikell*, 386 S.C. at 160, 687 S.E.2d at 330 ("When reviewing issues involving the construction of an ordinance, the determination of legislative intent is a matter of law.").  Further, the Town's intent was not to subject the selection of the Chamber as the Town's DMO to the Procurement Code; rather, section 6-4-10(3) of the South Carolina Code and the applicable provisions of the Procurement Code govern the Contract.  *See Rosenberg*, 418 S.C. at 180, 790 S.E.2d at 925 ("The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract.").

The Procurement Code was enacted to "provide for the fair and equitable treatment of all purposes involved in public purchasing by the town" and "applies to contracts for the procurement of supplies, services, and construction."  Hilton Head Island, S.C., Mun. Code §§ 11-1-112 and -113.  Procurement is defined as "[b]uying, purchasing, . . . or otherwise acquiring any supplies, services, or construction" as well as "all functions that pertain to the obtaining of any supply, service, or construction, including description of requirements, selection and solicitation of sources, preparation and award of contract, and all phases of contract administration."  Hilton Head Island, S.C., Mun. Code § 11-1-121(21).  "Service" is defined as "[t]he furnishing of labor, time, or effort by a contractor, not involving the delivery of a specific end product other than reports which are merely incidental to the required performance."  Hilton Head Island, S.C., Mun. Code § 11-1-121(30).

Section 6-4-10(3) of the South Carolina Code provides that the Town must (1) select one or more nonprofit organizations, such as a chamber of commerce, visitor bureau, or tourism commission, which has an existing, ongoing tourist promotion program to manage and direct the expenditure of the Fund, and (2) distribute the money to the chosen organization immediately after receiving the allocation from the Fund.  It further states the Fund can be "used only for advertising and promotion of tourism to develop and increase tourist attendance through the generation of publicity" and the organization selected to receive the Fund shall submit a budget and accounting each year to the Town.  § 6-4-10.  Section 4-12-10 of the Municipal Code requires the selected organization use the Fund allocation for "advertising and promotion of tourism to develop and increase tourist attendance through the generation of publicity" and further the selected organization to be "a non-profit organization and have an existing, ongoing tourism promotion program."  Section 4-12-20 of the Municipal Code provided the Chamber would be the Town's selected organization to manage and direct the

expenditure of the Fund.

We hold the intent of the Town in enacting the Procurement Code was to enable a bidding process for the receipt of funds in exchange for services rendered to the Town. The Town entered into the Contract not to procure services pursuant to Title 11 of the Procurement Code but rather to formalize the duties placed on it under section 6-4-10(3) of the South Carolina Code and establish the Chamber as the Town's chosen organization pursuant to section 6-4-10(3) of the South Carolina Code and section 4-12-10 of the Municipal Code, which reiterated the requirements of section 6-4-10(3). Although the Contract required the Chamber to, among other things, manage and direct the expenditure of the Fund, submit a budget of planned expenditures and a subsequent accounting of the expenditures, submit a DMO report and marketing plan, and submit tourism metrics, two Town officials and the president and chief operating officer for the Chamber stated the purpose of the Contract was to ensure the Chamber met compliance and operating standards rather procure services. Therefore, given the evidence in the record, there was not a genuine issue of material fact and the master did not err in granting summary judgment. Accordingly, we affirm.

**CONCLUSION**

Based on the foregoing, the master's grant of summary judgment is

**AFFIRMED.**

**KONDUROS and VINSON, JJ., concur.**